
FILED

2016 Mar-29  PM 04:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| WALTER ENERGY, INC., *et al*. | ) | Case No. 15-02741-TOM11 |
|  | ) |  |
| Debtors.[1] | ) | (Jointly Administered) |
|  | ) |  |

### ORDER (I) APPROVING THE SALE OF
### CERTAIN NON-CORE ASSETS FREE AND CLEAR OF CLAIMS,
### LIENS, INTERESTS AND ENCUMBRANCES; (II) APPROVING
### THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
### CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF

Upon the motion [Docket No. 993] (the "**Motion**")[2] of the Debtors dated November 5, 2015 for, among other things, entry of an order (the "**Order**") (I) authorizing the sale (the "**Sale**") of certain Non-Core Assets[3] to the bidder with the highest or otherwise best bid, which for purposes of this Order shall mean the sale of the Acquired Assets, as defined in the

---

[1] The Debtors in these cases, along with the last four digits of each of the Debtors' federal tax identification number, are: Walter Energy, Inc. (9953); Atlantic Development and Capital, LLC (8121); Atlantic Leaseco LLC (5308); Blue Creek Coal Sales, Inc. (6986); Blue Creek Energy, Inc. (0986); J.W. Walter, Inc. (0648); Jefferson Warrior Railroad Company, Inc. (3200); Jim Walter Homes, LLC (4589); Jim Walter Resources, Inc. (1186); Maple Coal Co. LLC (6791); Sloss-Sheffield Steel & Iron Company (4884); SP Machine, Inc. (9945); Taft Coal Sales & Associates, Inc. (8731); Tuscaloosa Resources, Inc. (4869); V Manufacturing Company (9790); Walter Black Warrior Basin LLC (5973); Walter Coke, Inc. (9791); Walter Energy Holdings, LLC (1596); Walter Exploration & Production LLC (5786); Walter Home Improvement, Inc. (1633); Walter Land Company (7709); Walter Minerals, Inc. (9714); and Walter Natural Gas, LLC (1198).

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Seminole/ERP Agreement (as defined below) and, if not defined therein, in the Motion or the Bidding Procedures Order (as defined below), as applicable.

[3] As used herein, "Non-Core Assets" shall mean the assets comprised of Lot 3 (the "**West Virginia Assets**"), Lot 4 (the "**Taft Assets**"), Lot 8 ("**Select JWR Assets**"), and Lot 9 ("**Walter Coke Assets,**" and collectively with the West Virginia Assets, the Taft Assets, and Select JWR Assets, the "**Non-Core Assets**").

Asset Purchase Agreement by and among certain of the Debtors,[4] as sellers (collectively, the "**Sellers**"), and Seminole Coal Resources, LLC, ERP Compliant Coke, LLC, and ERP Environmental Fund, Inc., as purchaser (collectively, the "**Purchaser**") substantially in the form filed with the Court on February 1, 2016 (the "**Seminole/ERP Agreement**") [Docket No. 1784] together with all exhibits, schedules and ancillary documents related thereto, including all Transaction Documents (as defined therein) and the Surety Bond Collateral Agreement, free and clear of all liens, claims, interests, and encumbrances (collectively, the "**Non-Core Sale Transaction**"); (II) authorizing the assumption and assignment of certain executory contracts and unexpired leases (the "**Assumed Contracts**") and the assumption of Assumed Liabilities, each as more fully described in the Seminole/ERP Agreement; and (III) granting related relief; and the Court having held a hearing on February 3, 2016 (the "**Sale Hearing**") to approve the Non-Core Sale Transaction; and the Court having reviewed and considered the relief sought in the Motion with respect to the Non-Core Assets, including without limitation declarations submitted in support of the Motion, including the Declaration of Adam B. Schlesinger in Support of Non-Core Asset Sale [Docket No. 1820](the "**Schlesinger Declaration**"), live witness testimony and other evidence proffered or adduced at the Sale Hearing; additional financial information regarding the Purchaser provided at the Court's request; the arguments of counsel in support of and in opposition to the Motion and the Non-Core Sale Transaction; and all parties in interest having been heard or having had the opportunity to be heard regarding the Non-Core Sale Transaction and the relief requested in this Order; and due and sufficient notice of the Sale Hearing and the relief sought therein having been given under the particular circumstances and in accordance with the Bidding Procedures Order; and it appearing that no other or further notice

---

[4]   The Sellers include Atlantic Development and Capital, LLC; Atlantic Leaseco, LLC, Maple Coal Co., LLC; Walter Coke, Inc., Walter Minerals, Inc., Jefferson Warrior Railroad Company, Inc., Jim Walter Resources, Inc., Taft Coal Sales & Associates, Inc., and Tuscaloosa Resources, Inc.

need be provided; and it appearing that the relief requested in the Motion with respect to the Non-Core Assets is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and upon the entire record of the Sale Hearing and these Chapter 11 Cases, and after due deliberation thereon, and good cause appearing therefor, it is hereby

**FOUND, CONCLUDED AND DETERMINED THAT:**[5]

A.      This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.  The legal predicates for the relief requested in the Motion are Bankruptcy Code sections 105, 363, 364, 365 and 503.  Such relief is also warranted pursuant to Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, and 9014.

B.      The Motion requested, among other things, that the Court approve bidding procedures for the sale of both the Debtors' Core Assets (as defined below) and Non-Core Assets. On November 25, 2015, the Court entered an order [Docket No. 1119] (the "**Bidding Procedures Order**"), which, among other things, (i) approved the Bidding Procedures, (ii) authorized the Assumption and Assignment Procedures, (iii) approved the form and manner of notice of the Motion and the other procedures, protections, schedules and agreements related thereto, and (iv) scheduled the Sale Hearing with respect to the Non-Core Assets.

C.      In accordance with the Bidding Procedures, the Debtors noticed several adjournments of the Bid Deadline, Auction Date, and Sale Hearing for the Non-Core Assets. [Docket Nos. 1469, 1621, 1660, 1693, 1729, and 1793].

---

[5]    The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D.       Several parties filed objections to the Motion, including those objections more particularly identified and described in Exhibit A to the Debtors' Omnibus Reply to Objections to the Motion [Docket No. 1552] and Exhibit A to the Debtors' Agenda for Hearing Scheduled February 4, 2016 [Docket No. 1831] (each, an "**Objection**," and collectively with all other formal or informal objections to the relief requested in the Motion, the "**Objections**"). Most of those Objections pertained solely to the Debtors' sale of its "core" Alabama coal mining assets (the "**Core Assets**") to Coal Acquisition, LLC (the "**Core Sale Transaction**"), which was approved by order of this Court dated January 8, 2016 (the "**Core Sale Transaction Order**")[Docket No. 1584].  The hearing on certain Objections based solely on 11 U.S.C. § 365 (the "**Cure Objections**") has been continued to February 17, 2016, as more particularly described in the *Notice of Continued Hearing on Certain Cure Objections* [Docket No. 1773].

E.       The relief granted herein is in the best interests of the Debtors, their estates and creditors, and other parties in interest.

F.       The Debtors have articulated good and sufficient business reasons for the Court to authorize (i) the Sellers' entry into the Seminole/ERP Agreement and consummation of the Non-Core Sale Transaction and (ii) the assumption and assignment of the Assumed Contracts and Assumed Liabilities as set forth herein and in the Seminole/ERP Agreement.

G.       As evidenced by the affidavits of service [Docket Nos. 1028, 1150, 1151, 1152, 1172, 1173, 1174, 1230, 1340, 1441, 1442, 1495, 1516, 1519, 1642, 1672, 1707, 1747] and publication [Docket Nos. 1387, 1543] previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing, the Non-Core Sale Transaction, the Assumption and Assignment Procedures and the assumption and assignment of the Assumed Contracts and the

applicable Cure Amounts has been provided in compliance with the Bidding Procedures Order and in accordance with Bankruptcy Code sections 102(1), 363, and 365, and Bankruptcy Rules 2002, 4001, 6004, 6006, 9006, 9007 and 9014, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the Non-Core Sale Transaction, the assumption and assignment of the Assumed Contracts or the Cure Amounts is or shall be required.  With respect to entities whose identities were not reasonably ascertained by the Debtors, publication of the Sale Notice was made in *The Wall Street Journal*, National Edition and *The Tuscaloosa News* on December 1, 2015, *The Birmingham News* on December 2, 2015, and again in *The Wall Street Journal*, National Edition, *The Tuscaloosa News* and *The Birmingham News*, as well as the *USA Today*, National Edition and the *Charleston Gazette and Daily News*, on or about December 9, 2015. Such notice was sufficient and reasonably calculated under the circumstances to reach all known and unknown entities.

H.    The Acquired Assets sought to be transferred and/or assigned, as applicable, by the Sellers to the Purchaser pursuant to the Seminole/ERP Agreement are property of the Sellers' estates and title thereto is vested in the Sellers' estates.  For the avoidance of doubt and to the extent they are part of the Non-Core Assets, cylinders owned by Airgas USA, LLC that are currently in the Debtors' possession are not Acquired Assets.

I.    The Debtors and their professionals marketed the Non-Core Assets and conducted the marketing and sale process in compliance with the Bidding Procedures and the Bidding Procedures Order.  Based upon the record of these proceedings, creditors and other parties in interest and prospective purchasers were afforded a reasonable and fair opportunity to bid for the Non-Core Assets.

J.      As part of its efforts to market the Non-Core Assets, the Debtors' advisors contacted 86 potential bidders.  The Debtors received signed non-disclosure agreements from 26 bidders, and received six bids for some or all of the Non-Core Assets, only four of which were conforming bids under the Bidding Procedures Order, including the Purchaser's bid (the "**Seminole/ERP Bid**").  *See* Schlesinger Declaration, ¶¶18, 22.  The Seminole/ERP Bid was the only bid submitted for substantially all of the Non-Core Assets and was deemed a Qualified Bid, and the Purchaser was deemed a Qualified Bidder.  *Id*. at ¶22.

K.      After reviewing all Bids, whether for some or all of the Non-Core Assets, the Debtors determined in a valid and sound exercise of their business judgment that the highest or otherwise best Qualified Bid for the Non-Core Assets was that of the Purchaser and that an auction was not required.  The Seminole/ERP Agreement provides for the purchase of the Acquired Assets, including in respect of Lots 3, 4, 8, and 9.[6]  The purchase price includes only a nominal cash consideration, but also provides for the assumption of the Assumed Liabilities, as set forth in the Seminole/ERP Agreement.

L.      The Bidding Procedures were substantively and procedurally fair to all parties and all potential bidders and afforded notice and a full, fair and reasonable opportunity for any person to make a higher or otherwise better offer to purchase the Non-Core Assets.  The Debtors conducted the sale process without collusion and in accordance with the Bidding Procedures.

M.      The Debtors and their professionals conducted the sale process in compliance with the Bidding Procedures Order, and afforded potential purchasers a full, fair and

---

[6]      The Debtors received two conforming bids for Lot 3 and one conforming bid for Lot 4, but only the Seminole/ERP Bid provided for the purchase of all four lots that together comprise the Non-Core Assets.

reasonable opportunity for any person or entity to make a higher or otherwise better offer for the Non-Core Assets.

N.      Subject to the entry of this Order, the Debtors:  (i) have full power and authority to execute the Seminole/ERP Agreement and all other documents contemplated thereby; (ii) have all of the power and authority necessary to consummate the transactions contemplated by the Seminole/ERP Agreement; and (iii) have taken all corporate action necessary to authorize and approve the Seminole/ERP Agreement and the other Transaction Documents and the Non-Core Sale Transaction, and all other actions required to be performed by the Debtors in order to consummate the transactions contemplated in the Seminole/ERP Agreement, including the Surety Bond Collateral Agreement and the other Transaction Documents.   No consents or approvals, other than those expressly provided for in the Seminole/ERP Agreement or this Order, are required for the Debtors to consummate the Sale of the Acquired Assets.

O.      The Seminole/ERP Agreement was negotiated and is undertaken by the Debtors and the Purchaser at arm's length without collusion or fraud, and in good faith within the meaning of Bankruptcy Code section 363(m).  The Purchaser is not an "insider" of any of the Debtors as that term is defined by Bankruptcy Code section 101(31).  The Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets, complied with the Bidding Procedures Order, and agreed to subject its bid to the competitive Bidding Procedures approved in the Bidding Procedures Order.  All releases and payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed.  The Purchaser has not violated Bankruptcy Code section 363(n) by any action or inaction, and no common identity of directors

or controlling stockholders exists between the Purchaser and the Debtors.  As a result of the foregoing, the Purchaser is entitled to the protections of Bankruptcy Code section 363(m), including in the event this Order or any portion thereof is reversed or modified on appeal, and otherwise has proceeded in good faith in all respects in connection with the proceeding.

P.      The total consideration provided by the Purchaser for the Acquired Assets is the highest or otherwise best offer received by the Debtors with respect to the Acquired Assets, and the Purchase Price constitutes reasonably equivalent value and fair consideration for the Acquired Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and any other applicable laws, and may not be avoided under Bankruptcy Code section 363(n) or under any other law of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law.  No other person or entity or group of persons or entities has offered to purchase the Acquired Assets for an amount that would provide greater economic value to the Debtors than the Purchaser.  The Debtors' determination that the Seminole/ERP Agreement constitutes the highest or otherwise best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.  The Court's approval of the Motion as set forth herein, the Sale of the Acquired Assets, the Non-Core Sale Transaction and the Seminole/ERP Agreement is in the best interests of the Debtors, their estates and creditors and all other parties in interest.

Q.      The Purchaser would not have entered into the Seminole/ERP Agreement and would not consummate the Non-Core Sale Transaction if the sale of the Acquired Assets to the Purchaser were not free and clear of all claims, liens, interests and encumbrances (other than Permitted Encumbrances and Assumed Liabilities) pursuant to Bankruptcy Code section 363(f) or if the Purchaser would, or in the future could, be liable for any of such claims, liens, interests

and encumbrances.   Unless expressly included in the Assumed Liabilities and Permitted Encumbrances, the Purchaser shall not be responsible for any claims, liens, interests and encumbrances, including in respect of the following:  (i) any labor or employment agreements; (ii) any mortgages, deeds of trust and security interests; (iii) any intercompany loans and receivables between one or more of the Sellers and any Debtor; (iv) any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**")), health or welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (v) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Code and of any similar state law (collectively, "**COBRA**"), (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) the Coal Industry Retiree Health Benefit Act of 1992, 26 U.S.C. §§9701, et seq. or (l) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors; (vi) any liabilities arising under any Environmental Laws with respect to any assets owned or operated by any of the Debtors or any corporate

predecessor of any of the Debtors at any time prior to the Closing Date; (vii) any bulk sales or similar law; (viii) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (ix) the Coal Act and (x) any Excluded Liabilities. There is no better available alternative for the Acquired Assets than the Sale to the Purchaser.  The Sale of the Acquired Assets contemplated by the Seminole/ERP Agreement is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

R.       The Debtors may sell the Acquired Assets free and clear of all claims, liens, interests and encumbrances (other than Assumed Liabilities and Permitted Encumbrances) because, with respect to each creditor asserting a claim, lien, interest or encumbrance, one or more of the standards set forth in Bankruptcy Code section 363(f)(1)-(5) has been satisfied. Those holders of claims, liens, interests or encumbrances who did not object or who withdrew their objections to the Sale of the Acquired Assets are deemed to have consented to the Motion as it relates to the Non-Core Sale Transaction pursuant to Bankruptcy Code section 363(f)(2). Those holders of claims, liens, interests or encumbrances who did object fall within one or more of the other subsections of Bankruptcy Code section 363(f).  Notwithstanding the foregoing, the Acquired Assets are being sold subject to the Permitted Encumbrances and the Assumed Liabilities.

S.       Neither the Debtors nor the Purchaser engaged in any conduct that would cause or permit the Seminole/ERP Agreement or the consummation of the Sale of the Acquired Assets to be avoided, or costs or damages to be imposed, under Bankruptcy Code section 363(n) or under any other law of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law.

T.      The Seminole/ERP Agreement, which constitutes reasonably equivalent value and fair consideration, was not entered into, and the Sale of the Acquired Assets is not consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtors under the Bankruptcy Code or under any other law of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law.  Neither the Debtors nor the Purchaser has entered into the Seminole/ERP Agreement or is consummating the Sale of the Acquired Assets with any fraudulent or otherwise improper purpose.

U.      Upon the Closing, the Purchaser shall not, and shall not be deemed to:  (i) be the successor of or successor employer (as described under COBRA and applicable regulations thereunder) to the Sellers, including without limitation, with respect to any Collective Bargaining Agreements and any Benefit Plans, under the Coal Act, and any common law successorship liability in relation to the UMWA 1974 Pension Plan, including with respect to withdrawal liability, (ii) be the successor of or successor employer to the Sellers, and shall instead be, and be deemed to be, a new employer with respect to any and all federal or state unemployment laws, including any unemployment compensation or tax laws, or any other similar federal or state laws, (iii) have, *de facto*, or otherwise, merged or consolidated with or into Sellers, (iv) be a mere continuation or substantial continuation of Sellers or the enterprise(s) of Sellers, or (v) be liable for any acts or omissions of Sellers in the conduct of the Business or arising under or related to the Acquired Assets, other than as set forth in the Seminole/ERP Agreement, including the Assumed Liabilities.  Without limiting the generality of the foregoing, and except as otherwise provided in the Seminole/ERP Agreement, the parties intend that the Purchaser shall not be liable for any Encumbrance or Liability (other than Assumed Liabilities and Permitted Encumbrances) against any Seller, or any of its predecessors or Affiliates, and the

Purchaser shall have no successor or vicarious liability of any kind or character whatsoever, whether known or unknown as of the Closing Date, whether now existing or hereafter arising, whether asserted or unasserted, or whether fixed or contingent, with respect to the Business, the Acquired Assets or any Liabilities of any Seller arising prior to the Closing Date.  The Purchaser would not have acquired the Acquired Assets but for the foregoing protections against potential claims based upon "successor liability" theories.

V.      Entry into the Seminole/ERP Agreement and the Non-Core Sale Transaction constitutes the exercise by the Debtors of sound business judgment, and such acts are in the best interests of the Debtors, their estates and creditors, and all parties in interest.  The Debtors have articulated good and sufficient business reasons justifying the Sale of the Acquired Assets to the Purchaser.  Additionally:  (i) the Seminole/ERP Agreement constitutes the highest or otherwise best offer for the Non-Core Assets; (ii) the Seminole/ERP Agreement and the closing of the Non-Core Sale Transaction will present the best opportunity to realize the value of the Acquired Assets and avoid further decline and devaluation of the Acquired Assets; (iii) there is risk of deterioration of the value of the Acquired Assets if the Non-Core Sale Transaction is not consummated promptly; and (iv) the Seminole/ERP Agreement and the Non-Core Transaction will provide greater value to the Debtors' estates than would be provided by any other presently available alternative.

W.      Good and sufficient reasons for approval of the Seminole/ERP Agreement and the Non-Core Sale Transaction have been articulated by the Debtors.  The Debtors have demonstrated compelling circumstances and a good, sufficient and sound business purpose for the Non-Core Sale Transaction outside:  (a) the ordinary course of business, pursuant to Bankruptcy Code section 363(b); and (b) a plan of reorganization, in that, among other things,

the immediate consummation of the Non-Core Sale Transaction is necessary and appropriate to maximize the value of the Debtors' estates.  To maximize the value of the Acquired Assets and preserve the viability of the operations to which the Acquired Assets relate, it is essential that the Sale occur within the time constraints set forth in the Seminole/ERP Agreement.  Time is of the essence in consummating the Non-Core Sale Transaction.

    X. The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assumed Contracts to the Purchaser in connection with the consummation of the Non-Core Sale Transaction, and the assumption and assignment of the Assumed Contracts to the Purchaser is in the best interests of the Debtors, their estates and creditors and all parties in interest.  The Assumed Contracts being assigned to the Purchaser are an integral part of the Acquired Assets being purchased by the Purchaser, and accordingly, such assumption and assignment of the Assumed Contracts is reasonable and enhances the value of the Debtors' estates.  The cure amounts required to be paid pursuant to section Bankruptcy Code 365(b), whether agreed or judicially resolved (the "**Cure Amounts**"), are deemed to be the entire cure obligation due and owing under the Assumed Contracts under Bankruptcy Code section 365(b).  To the extent that any non-Debtor counterparty to an Assumed Contract failed to timely file an objection to the proposed Cure Amount filed with the Bankruptcy Court, the Cure Amount listed in the Cure Notice shall be deemed to be the entire cure obligation due and owing under the applicable Assumed Contract.

    Y. Each provision of the Assumed Contracts or applicable non-bankruptcy law that purports to prohibit, restrict or condition, or could be construed as prohibiting, restricting or conditioning, assignment of any Assumed Contracts has been satisfied or is otherwise unenforceable under Bankruptcy Code section 365.

Z.      Upon the payment of the Cure Amount to the relevant counterparty to an Assumed Contract, there will be no outstanding default under each such Assumed Contract.

AA.     The Purchaser has demonstrated adequate assurance of future performance of all Assumed Contracts within the meaning of Bankruptcy Code section 365.

BB.     Upon the assignment to the Purchaser and the payment of the relevant Cure Amounts, each Assumed Contract shall be deemed valid and binding and in full force and effect in accordance with its terms, and all defaults thereunder, if any, shall be deemed cured, subject to the provisions of this Order.

CC.     An injunction against creditors and third parties pursuing claims against, and liens, interests and encumbrances on, the Acquired Assets is necessary to induce Purchaser to close the Non-Core Sale Transaction, and the issuance of such injunctive relief is therefore necessary to avoid irreparable injury to the Debtors' estates and will benefit the Debtors' creditors.

DD.     Good faith negotiations between Purchaser and the Debtors' management or key employees regarding compensation or future employment are ongoing, and Purchaser anticipates that agreements regarding employment and compensation will be reached. With respect to any agreements entered into between the Purchaser and the Debtors' management or key employees regarding compensation or future employment, if any exist, the Purchaser has disclosed the material terms of such agreements.

EE.     The Non-Core Sale Transaction does not constitute a *sub rosa* chapter 11 plan.  The Non-Core Sale Transaction neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates a liquidating plan of reorganization for any of the Debtors.

FF.     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Motion is GRANTED, to the extent set forth herein.

2.     Any Objection to the Motion to the extent related to the Acquired Assets, or any other relief granted in this Order, to the extent not resolved, adjourned for hearing on a later date, waived or withdrawn or previously overruled, and all reservations of rights included therein, is hereby overruled and denied on the merits.

3.     Pursuant to Bankruptcy Code sections 105, 363, 364, 365 and 503 and the Seminole/ERP Agreement, the Non-Core Sale Transaction is hereby approved and the Debtors are authorized to enter into and perform under the Seminole/ERP Agreement.  Pursuant to Bankruptcy Code sections 105, 363, 364, 365 and 503, each of the Debtors and the Purchaser are hereby authorized and directed to take any and all actions necessary or appropriate to: (i) consummate the Non-Core Sale Transaction in accordance with the Seminole/ERP Agreement and this Order; (ii) assume and assign the Assumed Contracts; and (iii) perform, consummate, implement and close fully the Seminole/ERP Agreement together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Seminole/ERP Agreement and the other Transaction Documents, including the Surety Bond Collateral Agreement, the terms and conditions of which are hereby approved.  The Debtors and each other party to the Transaction Documents, including the Surety Bond Collateral Agreement, are hereby authorized and directed to perform each of their covenants and undertakings as provided in the Seminole/ERP Agreement, including the Surety Bond Collateral Agreement and the other Transaction Documents, prior to or after the Closing Date without further order of the Court.  The Purchaser and the Debtors shall have no obligation to close the

Non-Core Sale Transaction except as is contemplated and provided for in the Seminole/ERP Agreement.

       4.      Pursuant to Bankruptcy Code section 365(f), notwithstanding any provision of any Assumed Contract or applicable non-bankruptcy law that prohibits, restricts or conditions the assignment of the Assumed Contracts, the Debtors are authorized to assume the Assumed Contracts and to assign the Assumed Contracts to the Purchaser, which assignment shall take place on and be effective as of the Closing or as otherwise provided herein, in the Seminole/ERP Agreement or by other order of this Court (as applicable, the "**Assumption Date**").  There shall be no accelerations, assignment fees, increases or any other fees charged to the Purchaser or the Debtors as a result of the assumption and assignment of the Assumed Contracts.  Pursuant to the Seminole/ERP Agreement, the Purchaser shall be permitted until February 15, 2016 (or such later date as the Sellers and Purchaser may agree) to designate in writing any Available Contracts to be designated as Assumed Contracts or Excluded Contracts, other than the contracts listed on Schedule 2.6(b) to the Seminole/ERP Agreement which, for the avoidance of doubt, are each an Assumed Contract.

       5.      The Debtors' assumption of the Assumed Contracts is subject to the consummation of the Non-Core Sale Transaction.  To the extent that an objection by a counterparty to any Assumed Contract, including all objections related to Cure Amounts, is not resolved prior to the Closing Date or the Assumption Date, if later, the Debtors, in consultation with the Purchaser, may elect to:  (i) not assume such Assumed Contract; (ii) postpone the assumption of such Assumed Contract until the resolution of such objection; or (iii) reserve the disputed Cure Amount and assume the Assumed Contract on the Closing or the Assumption Date, as applicable.  So long as the Debtors hold the claimed Cure Amount in reserve, and there are no other unresolved objections to the assumption and assignment of the applicable Assumed Contract, the Debtors can, without further delay, assume and assign to the Purchaser the Assumed Contract that is the subject of the objection.  Under such circumstances, the respective objecting counterparty's recourse is limited to the funds held in reserve.

6.      Upon the Closing:  (a) the Debtors are hereby authorized and directed to consummate, and shall be deemed for all purposes to have consummated, the sale, transfer and assignment of all of the Debtors' rights, title and interest in the Acquired Assets to the Purchaser free and clear of all Encumbrances and Liabilities, other than the Assumed Liabilities and the encumbrances identified on Schedule 1 hereto (the "**Permitted Encumbrances**"); and (b) except as otherwise expressly provided in the Seminole/ERP Agreement, all Encumbrances and Liabilities (other than the Assumed Liabilities and the Permitted Encumbrances) shall not be enforceable as against the Purchaser or the Acquired Assets.   Unless otherwise expressly included in the Assumed Liabilities and Permitted Encumbrances, the Purchaser shall not be responsible for any claims, liens, interests and encumbrances, including in respect of the following:  (i) any labor or employment agreements; (ii) any mortgages, deeds of trust and security interests; (iii) any intercompany loans and receivables between one or more of the Sellers and any Debtor; (iv) any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of ERISA), health or welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (v) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) COBRA, (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k)  the Coal Industry Retiree Health Benefit Act of 1992, 26 U.S.C. §§9701, et seq. or (l) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors; (vi) liabilities arising under any Environmental Laws with respect to any assets owned or operated by any of

the Debtors or any corporate predecessor of any of the Debtors at any time prior to the Closing Date; (vii) any bulk sales or similar law; (viii) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (ix) the Coal Act and (x) any Excluded Liabilities.  A certified copy of this Order may be filed with the appropriate clerk and/or recorder to act to cancel any such lien, claim, interest or encumbrance of record.

7.     The transfer to the Purchaser of the Debtors' rights, title and interest in the Acquired Assets pursuant to the Seminole/ERP Agreement shall be, and hereby is deemed to be, a legal, valid and effective transfer of the Debtors' rights, title and interest in the Acquired Assets, and vests with or will vest in the Purchaser all rights, title and interest of the Debtors in the Acquired Assets, free and clear of all claims, liens, interests and encumbrances of any kind or nature whatsoever (other than the Permitted Encumbrances and the Assumed Liabilities), with any such claims, liens, interests and encumbrances attaching to the sale proceeds in the same validity, extent and priority as immediately prior to the Sale of the Acquired Assets, subject to the provisions of the Seminole/ERP Agreement, and any rights, claims and defenses of the Debtors and other parties in interest.

8.     None of the Purchaser or its affiliates, successors, assigns, equity holders, employees or professionals shall have or incur any liability to, or be subject to any action by any of the Debtors or any of their estates, predecessors, successors or assigns, arising out of the negotiation, investigation, preparation, execution, delivery of the Seminole/ERP Agreement and the entry into and consummation of the Sale of the Acquired Assets, except as expressly provided in the Seminole/ERP Agreement and this Order.

9.     Except as expressly provided in the Seminole/ERP Agreement or by this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, vendors, suppliers, employees, trade creditors, litigation claimants and other persons, holding claims, liens, interests or encumbrances of any kind or nature whatsoever against or in the Debtors or the Debtors' interests in the Acquired Assets (whether known or unknown, legal or equitable, matured or

unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, whether imposed by agreement, understanding, law, equity or otherwise), including, without limitation, the non-debtor party or parties to each Assumed Contract, arising under or out of, in connection with, or in any way relating to, the Acquired Assets or the transfer of the Debtors' interests in the Acquired Assets to the Purchaser, shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing claims, liens, interests and encumbrances against the Purchaser or its affiliates, successors, assigns, equity holders, employees or professionals the Acquired Assets, or the interests of the Debtors in such Acquired Assets.  Following the Closing, no holder of a claim, lien, interest or encumbrance against the Debtors shall interfere with the Purchaser's title to or use and enjoyment of the Debtors' interests in the Acquired Assets based on or related to such claim, lien, interest or encumbrance, and, except as otherwise provided in the Seminole/ERP Agreement or this Order, all such claims, liens, interests or encumbrances, if any, shall be, and hereby are transferred and attached to the proceeds from the Sale of the Acquired Assets in the order of their priority, with the same validity, force and effect which they have against such Acquired Assets as of the Closing, subject to any rights, claims and defenses that the Debtors' estate and Debtors, as applicable, may possess with respect thereto.  All persons are hereby enjoined from taking action that would interfere with or adversely affect the ability of the Debtors to transfer the Acquired Assets in accordance with the terms of the Seminole/ERP Agreement and this Order.

10.    Upon assumption of the Assumed Contracts by the Debtors and assignment of same to the Purchaser, the Assumed Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order. Subject to the provisions of this Order, the Purchaser shall succeed to the entirety of Debtors' rights and obligations in each Assumed Contract first arising and attributable to the time period occurring on or after the Closing, but subject to the assignment of said Assumed Contracts

becoming effective, as provided herein and in the Seminole/ERP Agreement, and shall have all rights thereunder.

11.     Subject to paragraph 5 of this Order, upon the entry of this Order, (i) all defaults (monetary and non-monetary) under the Assumed Contracts through the Closing shall be deemed cured and satisfied through the payment of the Cure Amounts, (ii) no other amounts will be owed by the Debtors, their estates or the Purchaser with respect to amounts first arising or accruing during, or attributable or related to, the period before Closing with respect to the Assumed Contracts, and (iii) any and all persons or entities shall be forever barred and estopped from asserting a claim against the Debtors, their estates, or the Purchaser that any additional amounts are due or defaults exist under the Assumed Contracts that arose or accrued, or relate to or are attributable to the period before the Closing.

12.     The Seminole/ERP Agreement has been entered into by the Purchaser in good faith and the Purchaser is a good faith purchaser of the Acquired Assets as that term is used in Bankruptcy Code section 363(m).  The Purchaser is entitled to all of the protections afforded by Bankruptcy Code section 363(m).

13.     No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Non-Core Sale Transaction.  Except as otherwise provided in the Seminole/ERP Agreement, no obligation or liability, contingent or otherwise, for brokerage or finders' fees or agents' commissions or other similar payment is due to any person in connection with the Seminole/ERP Agreement, the other transaction documents or the transactions contemplated hereby or thereby for which the Purchaser is or will become liable.

14.     The consideration provided by the Purchaser for the Acquired Assets under the Seminole/ERP Agreement shall be deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and the Sale of the Acquired Assets may not be avoided, or costs or damages imposed or awarded under Bankruptcy Code section 363(n) or any other provision of the Bankruptcy Code,

the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act or any other similar federal or state laws.

15.     On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of all of the Debtors' rights, title and interest in the Acquired Assets or a bill of sale transferring good and marketable title in such Acquired Assets to the Purchaser on the Closing Date pursuant to the terms of the Seminole/ERP Agreement, free and clear of all claims, liens, interests and encumbrances (other than Assumed Liabilities and Permitted Encumbrances).

16.     Upon the Closing, except as specifically included in Assumed Liabilities, the Purchaser shall not and shall not be deemed to:  (i) be the successor of or successor employer (as described under COBRA and applicable regulations thereunder) to the Sellers, including without limitation, with respect to any Collective Bargaining Agreements and any Benefit Plans, under the Coal Act, and any common law successorship liability in relation to the UMWA 1974 Pension Plan, including with respect to withdrawal liability; (ii) be the successor of or successor employer to the Sellers, and shall instead be, and be deemed to be, a new employer with respect to any and all federal or state unemployment laws, including any unemployment compensation or tax laws, or any other similar federal or state laws; (iii) have, de facto, or otherwise, merged or consolidated with or into Sellers; (iv) be a mere continuation or substantial continuation of Sellers or the enterprise(s) of Sellers; or (v) be liable for any acts or omissions of Sellers in the conduct of the Business or arising under or related to the Acquired Assets other than as set forth in the Seminole/ERP Agreement.  Without limiting the generality of the foregoing, and except as otherwise provided in the Seminole/ERP Agreement, the parties intend and the Court hereby orders that the Purchaser shall not be liable for any Encumbrance or Liability (other than Assumed Liabilities and Permitted Encumbrances) against any Seller, or any of its predecessors or Affiliates, and the Purchaser shall have no successor or vicarious liability of any kind or character whether known or unknown as of the Closing Date, whether now existing or hereafter

arising, or whether fixed or contingent, with respect to the Business, the Acquired Assets or any Liabilities of any Seller arising prior to the Closing Date.

17.     This Order:  (a) is and shall be effective as a determination that other than Permitted Encumbrances and Assumed Liabilities, all claims, liens, interests and encumbrances of any kind or nature whatsoever existing as to the Acquired Assets prior to the Closing have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected; and (b) is and shall be binding upon and shall authorize all entities, including, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Acquired Assets conveyed to the Purchaser.   Other than Permitted Encumbrances, all recorded claims, liens, interests and encumbrances against the Acquired Assets from their records, official and otherwise, shall be deemed stricken.

18.     If any person or entity which has filed statements or other documents or agreements evidencing liens, interests or encumbrances on, or claims in, the Acquired Assets shall not have delivered to the Debtors before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all claims, liens, interests or encumbrances (other than Permitted Encumbrances) which the person or entity has or may assert with respect to the Acquired Assets, the Debtors and the Purchaser are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Acquired Assets.

19.     All counterparties to the Assumed Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, and shall not

charge the Debtors or the Purchaser for any instruments, applications, consents or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale of the Acquired Assets.

20.     Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale contemplated by the Seminole/ERP Agreement.

21.     Nothing in this Order or the Seminole/ERP Agreement releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the owner or operator of property after the Closing Date. Nothing in this Order or the Seminole/ERP Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with any applicable legal requirements under police or regulatory law.

22.     Without limiting the provisions of paragraph 21 above, but subject to Bankruptcy Code section 525(a), no governmental unit may revoke or suspend any right, license, trademark or other permission relating to the use of the Acquired Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale of the Acquired Assets.

23.     Nothing in this Order or the Seminole/ERP Agreement shall be construed to limit any independent obligation of the Purchaser arising after the closing pursuant to the National Labor Relations Act, 29 U.S.C. § 145 *et seq.*, provided, for the avoidance of doubt, that the Sale is free and clear of any claims, interests, liens and encumbrances based on any theory of successor liability relating to the Sellers' business.  Furthermore, nothing in this Order or the Seminole/ERP Agreement shall be construed to limit or modify any independent obligation of the Purchaser arising upon the closing pursuant to any collective bargaining agreement that the

Purchaser has negotiated with the United Steelworkers, in particular, the agreements that the Purchaser and the United Steelworkers executed on February 2, 2016.

24.      No provision of the Bidding Procedures Order, this Order, the Seminole/ERP Agreement (or any other purchase/sale agreement) shall be a ruling or is intended to be construed as a ruling on whether the Purchaser (or any other purchaser) is a successor to the debtors for purposes of registration and reporting under the federal securities laws (including relevant rules and regulations promulgated thereunder) (the "**Federal Securities Laws**"); and the Purchaser's (or any other purchaser's) obligation, if any, to file periodic public reports with the United States Securities and Exchange Commission shall be governed by applicable provisions of the Federal Securities Laws.  Nothing in the Bidding Procedures Order, this Order, the Seminole/ERP Agreement, or any other purchase/sale agreement with any other party shall relieve or excuse the Debtors, the Purchaser, or any other party from complying with any and all applicable Federal Securities Laws.  Further, the Seminole/ERP Agreement, and this Order are not binding upon the SEC with respect to enforcement of its police or regulatory powers and shall not limit the SEC from pursuing any police or regulatory enforcement action.

25.      As required by the Seminole/ERP Agreement, Sellers and Purchaser are authorized to enter into the Surety Bond Collateral Agreement, in substantially the form attached hereto as Exhibit A, the terms and conditions of which are hereby approved.  Without prejudice to the Surety Providers' rights under the letters of credit that support the Debtors' obligations to the Surety Providers under the Existing Bonds and indemnity agreements executed by the Debtors in favor of the Surety Providers (the "Existing Letters of Credit"), pursuant to the Seminole/ERP Agreement, the Surety Providers shall immediately make a partial or full draw, as applicable, on Existing Letters of Credit (solely to the extent permitted to do so under the applicable draw conditions in such Existing Letters of Credit) in an amount equal to the aggregate penal amount of Existing Surety Bonds (in an aggregate amount not to exceed $30 million) issued solely with respect to the Acquired Assets (the "LOC Proceeds") and shall transfer the LOC Proceeds to Purchaser's surety provider(s) on the terms and conditions set forth

in the Surety Bond Collateral Agreement without recourse to any such Surety Provider by any party, including any letter of credit issuer.  Effective as of the Closing, the Sellers and their Affiliates and the issuers of the Existing Letters of Credit shall be deemed to have relinquished and released all right, title and interest in and to the LOC Proceeds.  Except as otherwise agreed by the Surety Providers in the Surety Bond Collateral Agreement, nothing in the Seminole/ERP Agreement or this Order shall be deemed to alter, modify, limit, impair or prejudice any rights, remedies or defenses that:  (a) any surety has or may have under any indemnity agreements, surety bonds or related agreements or documents, or under any letters of credit relating thereto, including the Existing Letters of Credit; or (b) the principal(s) has or may have under any indemnity agreements, surety bonds or related agreements or documents.   Further, except with respect to the Alabama Contract Mining Agreement and the limitations on the same set forth in this Order, nothing in this Order, the Seminole/ERP Agreement or otherwise shall be deemed to express, imply, or otherwise provide either (a) that any surety has consented to the substitution of any principal on any outstanding surety bond, or (b) that any surety has consented to its bonds assuring any payment or performance obligation of any party other than the principal or principals named in such surety bond, which consent any such Surety Provider may provide in its sole and absolute discretion.

       26.     The Sureties have objected to approval of the Sale Motion on the basis that, with respect to each coal mining permit covered by the Alabama Contract Mining Agreement, which is referenced in the Seminole/ERP Agreement, the proposed contract mining provision constitutes an involuntary substitution of the principal under the applicable Existing Surety Bond, thereby discharging the Surety's liability under such bond.  In resolution of the Sureties' objection in this regard, and with consent of the Sureties, the Alabama Contract Mining Agreement is approved with the limitation that, unless otherwise agreed to by the Sureties in writing, any contract mining authorized thereunder shall terminate 180 days after the closing of the Seminole/ERP Sale, except with respect to any permit for which the applicable Existing Surety Bond(s) has been replaced and cancelled.

27.     Notwithstanding anything to the contrary in the Motion, the Seminole/ERP Agreement, the Bidding Procedures Order, any Cure Notice, or this Order:  (i) the Acquired Assets shall not include any insurance policies, surety bonds and any related agreements issued by ACE American Insurance Company or any of its affiliates listed on Schedule 2 (collectively and with each of their predecessors and successors, "**Chubb**") to (or providing coverage to) any Seller (collectively, the "**Chubb Contracts**"), and/or any rights, benefits, claims, rights to payments and/or recoveries under such Chubb Contracts; (ii) the Chubb Contracts, and/or any rights, benefits, claims, rights to payments and/or recoveries under such Chubb Contracts, shall be Excluded Assets; (iii) nothing shall alter, modify or otherwise amend the terms or conditions of the Chubb Contracts; and (iv) Chubb may continue to pay any proceeds due under the Chubb Contracts to the Sellers (as opposed to the Purchaser) or other claimant thereunder as required under the relevant Chubb Contracts, unless and until otherwise ordered by this Court.

28.     Notwithstanding anything to the contrary in this Order, without the prior written consent of Oracle America, Inc. ("**Oracle**"), the Debtors shall not assume and assign to the Purchaser or any Buyer Designee any contract between the Debtors and Oracle which includes or relates to a license of intellectual property, nor provide access to any Oracle licensed software, products, or services to the Purchaser or any Buyer Designee except as expressly permitted pursuant to the applicable contract(s).  With respect to any other Sale(s) contemplated by the Sale Motion, Oracle reserves all objections to the assumption and assignment of any contracts or licenses of intellectual property between Oracle and the Debtors.

29.     In the event that the Non-Core Sale Transaction does not close and the Seminole/ERP Agreement is terminated, paragraph 27 of the Core Sale Transaction Order shall remain in full force and effect, and an Environmental Response Trust will be established to fund environmental action with respect to Walter Coke on the terms set forth in the Core Sale Transaction Order and the Stalking Horse Agreement.

30.     In reference to the objection of the United States, on behalf of the U.S. Environmental Protection Agency ("**EPA**"), the parties to the Seminole APA have confirmed that ERP Compliant COKE, LLC is the entity acquiring the assets of Walter Coke, and ERP Compliant COKE, LLC will use those assets for the operations of the facility as well as the remediation obligations under the Administrative Order on Consent ("**AOC**") under RCRA with Walter Coke, Docket No. RCRA-04-2012-4255, which are being assumed by ERP Compliant COKE, LLC.

31.     To the extent this Order is inconsistent with any prior order or pleading filed in these Chapter 11 Cases related to the Motion, the terms of this Order shall govern.  To the extent there is any inconsistency between the terms of this Order and the terms of the Seminole/ERP Agreement, the terms of this Order shall govern.

32.     Except as expressly provided in the Seminole/ERP Agreement, nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting, or otherwise impair or diminish, any right (including, without limitation, any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not an Acquired Asset.

33.     All entities that are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of the Acquired Assets to the Purchaser on the Closing Date.

34.     This Order shall not be modified by any chapter 11 plan of any of the Debtors confirmed in these Chapter 11 Cases.

35.     This Order and the Seminole/ERP Agreement shall be binding in all respects upon all creditors and interest holders of the Debtors, all non-debtor parties to the Assumed Contracts, the Official Committee of Unsecured Creditors (the "**UCC**"), all successors and assigns of the Debtors and their affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Chapter 11 Cases or upon a conversion of the Debtors' cases to those under chapter 7 of the Bankruptcy Code, including a

chapter 7 trustee, and the Seminole/ERP Agreement shall not be subject to rejection or avoidance under any circumstances. If any order under Bankruptcy Code section 1112 is entered, such order shall provide (in accordance with Bankruptcy Code sections 105 and 349) that this Order and the rights granted to the Purchaser hereunder shall remain effective and, notwithstanding such dismissal, shall remain binding on parties in interest.

36.     The failure specifically to include or make reference to any particular provisions of the Seminole/ERP Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Seminole/ERP Agreement is authorized and approved in its entirety.

37.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order, including, without limitation, the authority to: (i) interpret, implement and enforce the terms and provisions of this Order (including the injunctive relief provided in this Order) and the terms of the Seminole/ERP Agreement, all amendments thereto and any waivers and consents thereunder; (ii) protect the Purchaser, or the Acquired Assets, from and against any of the claims, liens, interests or encumbrances; (iii) compel delivery of all Acquired Assets to the Purchaser; (iv) compel the Purchaser to perform all of its obligations under the Seminole/ERP Agreement; and (v) resolve any disputes arising under or related to the Seminole/ERP Agreement or the Sale of the Acquired Assets.

38.     The Seminole/ERP Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented through a written document signed by the parties thereto in accordance with the terms thereof without further order of the Court; provided, however, that any such modification, amendment or supplement is neither material nor materially changes the economic substance of the transactions contemplated hereby.

39.     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding any provision in the Bankruptcy Rules to the contrary, including but not limited to Bankruptcy Rule 6004(h), the Court expressly finds there is no reason for delay in the implementation of this Order and, accordingly:   (i) the terms of this Order shall be

immediately effective and enforceable upon its entry; (ii) the Debtors are not subject to any stay of this Order or in the implementation, enforcement or realization of the relief granted in this Order; and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

    40. The provisions of this order are nonseverable and mutually dependent.

Dated: February 8, 2016     <u>/s/ Tamara O. Mitchell</u>
                 TAMARA O. MITCHELL
                 UNITED STATES BANKRUPTCY JUDGE

Schedule 1

**PERMITTED ENCUMBRANCES**

1.      The lien for ad valorem property taxes and any other property-related taxes, dues or assessments for any tax year beginning in 2015, and all subsequent tax years, and any current use roll-back taxes, if assessed.

2.      All restrictions, reservations, easements, servitudes, rights-of-way, leases, mineral leases and encumbrances, whether or not of record, that run with the land, and riparian rights incident to the land; provided that nothing herein or in the Seminole/ERP Agreement shall be deemed to constitute the Grantee's consent to or acceptance of any unrecorded instrument of which Grantee does not have actual knowledge.

3.      Any encroachment, overlap, violation, variation or adverse circumstances that would be disclosed by an accurate and complete survey and inspection of the land.

4.      Any reservation or conveyance of minerals and other subsurface materials of every kind and character filed in the appropriate real property records on or before July 15, 2015, including, but not limited to, coal, oil, gas, sand, ore, kaolin, clay, stone and gravel in, on and under the land, together with mining rights and all other rights, privileges and immunities relating thereto, including any release of damages.

5.      All applicable laws, rules, regulations, ordinances and orders of any government or governmental body, agency or entity, including, without limitation, zoning and other land use rules, regulations and ordinances and environmental laws, rules and regulations.

**Schedule 2**

**List of Chubb Affiliates**

| | |
|---|---|
| 1. | ACE American Insurance Company |
| 2. | ACE Fire Underwriters Insurance Company |
| 3. | ACE Indemnity Insurance Company |
| 4. | ACE Insurance Company of Ohio |
| 5. | ACE Insurance Company of Texas |
| 6. | ACE of the Midwest Insurance Company |
| 7. | ACE Property and Casualty Insurance Company |
| 8. | Atlantic Employers Insurance Company |
| 9. | Bankers Standard Fire and Marine Company |
| 10. | Bankers Standard Insurance Company |
| 11. | Century Indemnity Company |
| 12. | ESIS, Inc. |
| 13. | Illinois Union Insurance Company |
| 14. | INA Surplus Insurance Company |
| 15. | Indemnity Insurance Company of North America |
| 16. | Insurance Company of North America |
| 17. | Pacific Employers Insurance Company |
| 18. | Westchester Fire Insurance Company |
| 19. | Westchester Surplus Lines Insurance Company |

1/3930503.8

# EXHIBIT A

## SURETY BOND COLLATERAL AGREEMENT

1

## AGREEMENT REGARDING REPLACEMENT OF BONDS
## AND DISPOSITION OF COLLATERAL

This AGREEMENT REGARDING REPLACEMENT OF BONDS AND DISPOSITION OF COLLATERAL (the "Agreement") is entered into as of the ___ day of February, 2016, by and among Walter Energy, Inc., for itself and on behalf of certain of its subsidiaries and affiliates (collectively, "Debtors"), Seminole Coal Resources, LLC ("SCR"), ERP Compliant Coke, LLC ("ERPCC"), and ERP Environmental Fund, Inc. ("ERPEF") (SCR, ERPCC and ERPEF collectively, the "Seminole Parties"), Arch Insurance Company and affiliates ("Arch"), and Aspen American Insurance Company and affiliates ("Aspen") (Arch and Aspen, collectively, the "Surety Providers") (Debtors, the Seminole Parties, and the Surety Providers, collectively, the "Parties"). Capitalized terms used but not defined herein shall have the meanings assigned to such terms in the Seminole APA (as such term is defined below).

WHEREAS, Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on July 15, 2015 (the "Petition Date") in the U.S. Bankruptcy Court for the Northern District of Alabama (the "Court"), Case No. 15-02741 (the "Case"); and

WHEREAS, prior to the Petition Date, the Surety Providers issued surety bonds set forth in Exhibit A (the "Existing Surety Bonds") on behalf of the Debtors supporting, among other things, the Debtors' obligations under various coal mining-related permits ; and

WHEREAS, as security to the Surety Providers, the Debtors executed the  Indemnity Agreements and procured the following letters of credit issued for the benefit of the Surety Providers (collectively, the "Letters of Credit"):

| Letter of Credit No. | Beneficiary | Issuing Bank | Amount |
|---|---|---|---|
| 2015031600 | Aspen | Morgan Stanley | $  4,900,000 |
| 2015071400 | Aspen | Morgan Stanley | $  6,367,000 |
| 2015071401 | Aspen | Morgan Stanley | $  3,200,000 |
| 3119652 | Aspen | Bank of America | $  4,000,000 |
| 3119653 | Arch | Bank of America | $ 22,000,000 |
| | | TOTAL: | $ 40,467,000 |

WHEREAS, the Debtors have obtained Court approval of the sale of certain coal mining and natural gas assets and the transfer of certain related permits to Coal Acquisition LLC ("Coal Acquisition") pursuant to a sale order entered January 8, 2016 (Docket Entry No. 1584)  (the "Coal Acquisition Transaction"); and

WHEREAS, the Coal Acquisition Transaction contemplates the replacement of certain of the Existing Surety Bonds (the "Coal Acquisition Surety Bonds") that currently support the permits that are to be transferred to Coal Acquisition, which Coal Acquisition Surety Bonds are identified on Exhibit B;

2

WHEREAS, pursuant to the Asset Purchase Agreement dated January 31, 2016 (the "Seminole APA"), the Debtors have agreed, subject to Court approval, to sell substantially all of their remaining coal mining and other assets, and transfer certain related permits, to the Seminole Parties. The Seminole APA requires, among other things, that the Seminole Parties replace all of the Existing Surety Bonds (collectively, the "Seminole APA Surety Bonds") that support those permits to be transferred to the Seminole Parties, which Seminole APA Surety Bonds are identified on Exhibit C; and

WHEREAS, a condition precedent to the Seminole Parties' obligations under the Seminole APA is the execution and delivery of an agreement with the Surety Providers and the Debtors regarding the transfer of certain proceeds of the Letters of Credit to the Replacement Provider (as defined below) to secure the issuance of replacement bonds for the Seminole APA Surety Bonds; and

WHEREAS, the Debtors have requested that the Surety Providers agree to draw on the Letters of Credit in their applicable Draw Amount (as defined below) and disburse and release the cash proceeds derived from such draws (the "LOC Cash Proceeds") to the Replacement Provider (as defined below) in the manner set forth herein; and

WHEREAS, with respect to each of the Surety Providers, such Surety Provider agrees, on the terms and conditions set forth herein, the terms and conditions set forth in the Letters of Credit, and subject to Court approval of this Agreement, to draw upon the Letters of Credit issued for their respective benefit in their respective Draw Amount and to release the LOC Cash Collateral to the Replacement Provider on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the foregoing premises, and other good and valuable considerations, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

1. Definitions.

   a. "Draw Amount" means (a) with respect to Arch, an amount equal to the cumulative penal sum of the Seminole APA Surety Bonds issued by Arch, which sum is set forth on Exhibit C, and (b) with respect to Aspen, an amount equal to the cumulative penal sum of the Seminole APA Surety Bonds issued by Aspen, which sum is set forth on Exhibit C.

   b. "Indemnity Agreement" means (1) with respect to Arch, the Arch Insurance Company General Agreement of Indemnity dated March 28, 2013 and (2) with respect to Aspen, the Aspen American Insurance Company General Indemnity Agreement dated March 28, 2013.

   c. "Replacement Provider" means the surety provider or providers that issue the Replacement Surety Bonds.

   d. "Approval Order" means the order or orders of the Court approving the Seminole APA, the transactions contemplated by the Seminole APA, and this Agreement.

3

2.   <u>Drawing of the Letters of Credit.</u>   Each of the Surety Providers agrees to initiate, immediately after entry by the Court of the Approval Order, draws in their respective Draw Amount against the Letters of Credit issued for their respective benefit in accordance with the terms and conditions of such Letters of Credit.   The making of any partial draws against the Letters of Credit by the Surety Providers shall not waive, release, or otherwise impair the rights of the Surety Providers to make further draws against their respective Letters of Credit from time to time thereafter, in accordance with the terms and conditions of such Letters of Credit.   The Surety Providers reserve the right, with respect to any partial draw under any Letter of Credit to procure the Draw Amount, to request confirmation by the respective issuer of such Letter of Credit that any such partial draw shall not waive or invalidate such Letter of Credit with respect to the remaining undrawn amount; provided, however, that the Surety Providers reserve the right to draw the full face amount of the Letter of Credit in the event that such confirmation by such issuer of the Letter of Credit is not received within one business day after such request is made.

3.   <u>Distribution of LOC Cash Proceeds.</u>   The Surety Providers shall transfer timely, in accordance with customary business practices pertaining to the replacement of surety bonds in like circumstances, their respective LOC Cash Proceeds to the Replacement Providers upon the satisfaction of each of the following conditions: (a) the closing of the Coal Acquisition Transaction; (b) the replacement and cancellation of the Coal Acquisition Surety Bonds; (c) the replacement and cancellation of the Seminole APA Surety Bonds; and (d) the Closing under the Seminole APA.

4.   <u>Transfer Instructions and Notices.</u>   Any notice to be given or to be served upon any Party hereto, in connection with this Agreement, must be in writing, and may be given by Federal Express or other nationally recognized courier which provides evidence of delivery and shall be deemed to have been given and received on the next business day after any such notice, properly addressed, with overnight, priority service prepaid, is delivered to Federal Express or such other courier.  If given otherwise than as provided in the preceding sentence, any such notice shall be deemed to have been given when delivered to and received by the party to whom it is addressed. Notices given by facsimile transmission or e-mail shall be deemed given and received as of the time and date set forth on the electronic confirmed receipt of transmission of the sender.  A notice delivered by the attorney for a party to this Agreement shall constitute a valid notice on behalf of that party.  Such notices shall be given to the parties hereto at the addresses denoted on each party's signature line below.  Any party hereto may, at any time by giving five (5) days' written notice to the other parties hereto, designate any other address in substitution of the foregoing address to which such notice shall be given.

5.   <u>Releases.</u>   The Debtors, for themselves and their respective successors, assigns, subsidiaries and affiliates, hereby consent to the draw by the Surety Providers on the Letters of Credit in the Draw Amounts and the transfer of the LOC Cash Collateral in accordance with this Agreement and hereby waive and release any defenses to indemnity that they may have that relate to the release of collateral hereunder.

4

6. <u>Survival of Indemnity Agreements.</u>  Notwithstanding any terms of this Agreement, the Indemnity Agreements shall remain in full force and effect with respect to all Indemnitors.

7. <u>Counterparts.</u>  This Agreement may be executed in separate and identical counterparts, each of which shall constitute an original, and all of which shall constitute a single agreement.  A facsimile of an executed original counterpart of this Agreement will have the same force and effect as an executed original counterpart.

8. <u>Court Approval.</u>  This Agreement and the rights and obligations of the Parties hereto are expressly conditioned upon the entry by the Court of the Approval Order in form and substance satisfactory to the Parties.

5

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be executed by each of their duly authorized representatives as of the day and year first written above.

**DEBTORS:**

**WALTER ENERGY, INC.**

By:_____
Name:  Walter J. Scheller
Its:  Chief Executive Officer

**SEMINOLE PARTIES:**

**SEMINOLE COAL RESOURCES, LLC**

By:_____
Name:  Thomas M. Clarke
Its:  Managing Member

**ERP COMPLIANT COKE, LLC**

By:_____
Name:  Thomas M. Clarke
Its:  Managing Member

**ERP ENVIRONMENTAL FUND, INC.**

By:_____
Name:  Thomas M. Clarke
Its:  President and CEO

6

**SURETY PROVIDERS:**

**ARCH INSURANCE COMPANY**

By:_____
Name:_____
Its:_____

**ASPEN      AMERICAN      INSURANCE
COMPANY**

By:_____
Name:_____
Its:_____

7

## EXHIBIT A

**Existing Surety Bonds**

**[see attached]**

**EXHIBIT A**
**to**
**Agreement Regarding Replacement of Bonds and Return of Collateral**
**(Arch)**

| Principal | Bond # | Bond Amount | Bond Description/ Permit No. | Obligee | Risk State |
|---|---|---|---|---|---|
| Jim Walter Resources, Inc. | SU 1121405-0000 | $2,498,720 | State of Alabama Surface Mining Commission Surety Permit P-3256 Incr. 1 659 Acres JWR Mine No. 5 | Alabama Surface Mining Commission | AL |
| Jim Walter Resources, Inc. | SU 1121406-0000 | $2,496,317 | State of Alabama Surface Mining Commission Surety P-3256 Incr. 3 254 Acres JWR Mine No. 5 | Alabama Surface Mining Commission | AL |
| Jim Walter Resources, Inc. | SU 1121407-0000 | $191,590 | State of Alabama Surface Mining Commission Surety P-3256 Incr. 4 238 Acres JWR Mine 5 | Alabama Surface Mining Commission | AL |
| Jim Walter Resources, Inc. | SU 1121408-0000 | $79,810 | State of Alabama Surface Mining Commission Surety P-3256 Inr. 5 44 Acres JWR Mine 5 | Alabama Surface Mining Commission | AL |
| Jim Walter Resources, Inc. | SU 1121409-0000 | $95,105 | State of Alabama Surface Mining Commission Surety P-3256 Incr. 2 73 Acres JWR Mine 5 | Alabama Surface Mining Commission | AL |
| Jim Walter Resources, Inc. | SU 1121433-0000 | $2,159,305 | State of Alabama Surface Mining Commission Surety P-3852 Incr. 4 112 Acres East Brookwood Mine | Alabama Surface Mining Commission | AL |
| Jim Walter Resources, Inc. | SU 1121434-0000 | $861,461 | State of Alabama Surface Mining Commission Surety P-3852 Incr. 3 67 Acres East Brookwood Mine | Alabama Surface Mining Commission | AL |
| Jim Walter Resources, Inc. | SU 1121437-0000 | $71,875 | State of Alabama Surface Mining Commission Surety P-3852 Incr. 1 57 Acres | Alabama Surface Mining Commission | AL |

1059162.1

1 of 10

**EXHIBIT A**
to
**Agreement Regarding Replacement of Bonds and Return of Collateral**
**(Arch)**

| Principal | Bond # | Bond Amount | Bond Description/ Permit No. | Obligee | Risk State |
|---|---|---|---|---|---|
| Jim Walter Resources, Inc. | SU 1121456-0000 | $0 | Drilling, Operation or Production of One or More - Bond (Blanket) **Bond Released Per Release/Discharge Letter 1/8/2016** | State Oil and Gas Board of Alabama | AL |
| Jim Walter Resources, Inc. | SU 1121464-0000 | $25,000 | Public Right of Way Bond - 1370 Feet of Gas Pipe Hannah Creek Road from Black Warrior Methane Compressor Station to Entrance to No. 7 Mine | Alabama Department of Transportation | AL |
| Jim Walter Resources, Inc. | SU 1121998-0000 | $25,000 | Alabama Dept. of Conservation and Natural Resources - Coal Lease No. 6 - Mine Nos. 4, 5 and 7 | Alabama Department of Conservation and Natural Resources | AL |
| Jim Walter Resources, Inc. | SU 1121999-0000 | $55,000 | Board of Trustees Univ. of Alabama - Coal Lease 4/12/97 - Mine No. 7 | Board of Trustees Univ. of Alabama | AL |
| Jim Walter Resources, Inc. | SU 1122205-0000 | $50,000 | Right of way work - Hwy 216 | Alabama Department of Transportation | AL |
| Jim Walter Resources, Inc. | SU 1122206-0000 | $25,000 | Road Bore Lock 17 Rd approx 2.7 miles from Hwy 216 | Tuscaloosa County | AL |
| Tuscaloosa Resources, Inc. | SU 1121432-0000 | $2,932,114 | State of Alabama Surface Mining Commission Surety P 3819 Incr. 4 389 Acres | Alabama Surface Mining Commission | AL |
| Tuscaloosa Resources, Inc. | SU 1121435-0000 | $308,545 | State of Alabama Surface Mining Commission Surety P 3839 Incr. 5 190 Acres Howton | Alabama Surface Mining Commission | AL |
| Jim Walter Resources, Inc. | SU 1121436-0000 | $32,200 | State of Alabama Surface Mining Commission Surety P 3852 Incr. 2 63 Acres | Alabama Surface Mining Commission | AL |

**EXHIBIT A**
**to**
**Agreement Regarding Replacement of Bonds and Return of Collateral**
**(Arch)**

| Principal | Bond # | Bond Amount | Bond Description/ Permit No. | Obligee | Risk State |
|---|---|---|---|---|---|
| Tuscaloosa Resources, Inc. | SU 1121438-0000 | $146,050 | State of Alabama Surface Mining Commission Surety P 3839 Incr. 1 57 Acres | Alabama Surface Mining Commission | AL |
| Tuscaloosa Resources, Inc. | SU 1121439-0000 | $137,310 | State of Alabama Surface Mining Commission Surety P 3819 Inc. 6 47 Acres Carter | Alabama Surface Mining Commission | AL |
| Tuscaloosa Resources, Inc. | SU 1121440-0000 | $137,310 | State of Alabama Surface Mining Commission Surety P 3839 Incr. 3 Howton | Alabama Surface Mining Commission | AL |
| Tuscaloosa Resources, Inc. | SU 1121441-0000 | $134,435 | State of Alabama Surface Mining Commission Surety P 3839 Incr. 4 156 Acres Howton | Alabama Surface Mining Commission | AL |
| Tuscaloosa Resources, Inc. | SU 1121444-0000 | $60,000 | State of Alabama Surface Mining Commission Surety P 3774 Incr. 5 75 Acres Panther | Alabama Surface Mining Commission | AL |
| Jim Walter Resources, Inc. | SU 1121445-0000 | $43,700 | State of Alabama Surface Mining Commission Surety P 3852 Incr. 3 13 Acres East Brookwood | Alabama Surface Mining Commission | AL |
| Tuscaloosa Resources, Inc. | SU 1121447-0000 | $35,200 | State of Alabama Surface Mining Commission Surety P 3817 Incr 1 44 Acres Panther 2 | Alabama Surface Mining Commission | AL |
| Tuscaloosa Resources, Inc. | SU 1121448-0000 | $32,430 | State of Alabama Surface Mining Commission Surety P 3839 Incr. 1 27 Acres Howton | Alabama Surface Mining Commission | AL |
| Tuscaloosa Resources, Inc. | SU 1121450-0000 | $20,800 | State of Alabama Surface Mining Commission Surety P 3817 Incr. 4 26 Acres Panther 2 | Alabama Surface Mining Commission | AL |

**EXHIBIT A**
to
**Agreement Regarding Replacement of Bonds and Return of Collateral**
**(Arch)**

| Principal | Bond # | Bond Amount | Bond Description/ Permit No. | Obligee | Risk State |
|---|---|---|---|---|---|
| Tuscaloosa Resources, Inc. | SU 1121451-0000 | $15,870 | State of Alabama Surface Mining Commission Surety P 3839 Incr 6 9 Acres Howton | Alabama Surface Mining Commission | AL |
| Tuscaloosa Resources, Inc. | SU 1121452-0000 | $8,800 | State of Alabama Surface Mining Commission Surety P 3817 Incr 6 11 Acres Panther 2 | Alabama Surface Mining Commission | AL |
| Walter Black Warrior Basin, LLC | SU 1121460-0000 | $25,000 | Oil and Gas or Geothermal Lease Bond | United States Department Of Interior - Bureau of L | AL |
| **Bond Principal is Black Warrior Methane Corp. (not a Debtor)** | SU 1121457-0000 | $100,000 | Drilling, Operation or Production of One or More | State Oil And Gas Board of Alabama | AL |
| Walter Black Warrior Basin, LLC | SU 1121459-0000 | $180,000 | Utility Bond - Indemnity Bond for Electric Service | Alabama Power Company | AL |
| Walter Black Warrior Basin, LLC | SU 1121461-0000 | $400,000 | Drilling, Operation or Production of One or More | State Oil And Gas Board of Alabama | AL |
| Walter Black Warrior Basin, LLC | SU 1121466-0000 | $20,000 | Public Right of Way Bond - Permit Agreement | Tuscaloosa County Public Works Dept. | AL |
| Walter Energy, Inc. | SU 1121463-0000 | $25,000 | Public Right of Way Bond - Construction of Water Line - Permit Date 01/09/1999 | Tuscaloosa County Commission | AL |
| Jim Walter Resources, Inc. | SU 1121468-0000 | $1,500,000 | Self Insured Workers Compensation Bond | State of Alabama Department of Industrial Relation | AL |
| Jim Walter Resources, Inc. | SU 1121469-0000 | $400,000 | Reclamation Bond - Bond Under Lease for Mining Coal (under Federal Lease) - North River Mine | Department of The Interior - Bureau of Land Manage | AL |

**EXHIBIT A**

**to**

**Agreement Regarding Replacement of Bonds and Return of Collateral**

**(Arch)**

| Principal | Bond # | Bond Amount | Bond Description/ Permit No. | Obligee | Risk State |
|---|---|---|---|---|---|
| Jim Walter Resources, Inc. | SU 1122202-0000 | $50,000 | Right of way work - Hwy AL 13 & US 43 | Alabama Department of Transportation | AL |
| Maple Coal Co., LLC | SU 1122203-0000 | $25,000 | (10) HDPE SDR 21 Pipe (Water, Non-Pressurized) through WDOH right of way and under existing two lane bridge Paint Creek Road near Whitaker, WV | State of West Virginia Dept of Highways | WV |
| Walter Coke, Inc. | SU 1121467-0000 | $150,000 | Self Insured Workers Compensation Bond | State of Alabama Department of Industrial Relation | AL |
| Atlantic LeaseCo LLC | SU 1121376-0000 | $621,680 | Reclamation Bond - Permit Number P065700 - 320 Acres | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121377-0000 | $545,160 | Reclamation Bond - Permit Number R068000 - Incr#1 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121378-0000 | $460,080 | Reclamation Bond - Permit Number S306386 - Incr#1 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121379-0000 | $388,080 | Reclamation Bond - Permit Number R068000 - Incr#2 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121380-0000 | $380,000 | Reclamation Bond - Permit Number S306386 - 379.36 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121381-0000 | $320,320 | Reclamation Bond - Permit Number S011685 - Incr#2 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121382-0000 | $267,960 | Reclamation Bond - Permit Number R068000 - Incr#3 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121383-0000 | $165,440 | Reclamation Bond - Permit Number S011685 - Incr#4 | State of West Virginia | WV |

EXHIBIT A
to
Agreement Regarding Replacement of Bonds and Return of Collateral
(Arch)

| Principal | Bond # | Bond Amount | Bond Description/ Permit No. | Obligee | Risk State |
|---|---|---|---|---|---|
| Atlantic LeaseCo LLC | SU 1121384-0000 | $157,160 | Reclamation Bond - Permit Number S306386 - Inc#4 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121385-0000 | $154,000 | Reclamation Bond - 69.04 Acres of Land Situated in Hamilton District of Nicholas County in WV Near Calvin Permit No. E007800 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121386-0000 | $145,000 | Reclamation Bond - Permit Number S300407 - Incr#1 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121388-0000 | $135,240 | Reclamation Bond - Permit Number U302006 - 48.40 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121389-0000 | $129,000 | Reclamation Bond - Permit Number Z005981 - 128.90 Acres | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121390-0000 | $116,440 | Reclamation Bond - Permit Number S306386 - Incr#3 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121391-0000 | $105,600 | Reclamation Bond - Permit Number S011685 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121393-0000 | $62,640 | Reclamation Bond - Permit Number U300610 - 17.16 Acres | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121394-0000 | $59,640 | Reclamation Bond - Permit Number S306386 - Incr#3 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121395-0000 | $59,000 | Reclamation Bond - Permit Number H062800 - 58.23 Acres | State of West Virginia | WV |

**EXHIBIT A**
to
**Agreement Regarding Replacement of Bonds and Return of Collateral**
**(Arch)**

| Principal | Bond # | Bond Amount | Bond Description/ Permit No. | Obligee | Risk State |
|---|---|---|---|---|---|
| Atlantic LeaseCo LLC | SU 1121396-0000 | $52,360 | Reclamation Bond - Permit Number R068000 - Incr#4 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121397-0000 | $49,280 | Reclamation Bond - Permit Number U300308 - 15.70 Acres | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121398-0000 | $32,560 | Reclamation Bond - Permit Number U302707 - Incr#1 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121399-0000 | $21,240 | Reclamation Bond - Permit Number U300807 - 8.54 Acres | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121400-0000 | $12,000 | Reclamation Bond - Permit Number H065800 - 11.32 Acres | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121401-0000 | $10,000 | Reclamation Bond - Permit Number U009083 - 14.05 Acres | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1122204-0000 | $204,160 | Reclamation Bonds - Permit Number S011685 - surface mining | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1122207-0000 | $38,400 | Reclamation Bond - Permit No. S-3016-11 Peerless Mine 1 | State of West Virginia | WV |
| Jim Walter Resources, Inc. | SU 1121404-0000 | $3,940,141 | State of Alabama Surface Mining Commission Surety Permit P-3222 Incr. 1 921 Acres | Alabama Surface Mining Commission | AL |
| Jim Walter Resources, Inc. | SU 1121410-0000 | $66,700 | State of Alabama Surface Mining Commission Surety P-3257 Incr 5 56 Acres Mine No. 3 Jefferson Co. AL | Alabama Surface Mining Commission | AL |

1059162.1

**EXHIBIT A**
**to**
**Agreement Regarding Replacement of Bonds and Return of Collateral**
**(Arch)**

| Principal | Bond # | Bond Amount | Bond Description/ Permit No. | Obligee | Risk State |
|---|---|---|---|---|---|
| Jim Walter Resources, Inc. | SU 1122208-0000 | $118,450 | Coal or Restoration of Land to Acceptable Levels P-3222 Increment 8 | State of Alabama Surface Mining Commission | AL |
| Jim Walter Resources, Inc. | SU 1122209-0000 | $415,150 | Coal or Restoration of Land to Acceptable Levels P-3222 Increment 7 | State of Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121411-0000 | $1,481,341 | State of Alabama Surface Mining Commission Surety P-3799 Incr. 6 163 Acres - Choctaw Mining Permit | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121412-0000 | $148,120 | State of Alabama Surface Mining Commission Surety P 3921 Incr. 1 184 Acres Reid School Mining Permit | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121413-0000 | $1,388,855 | State of Alabama Surface Mining Commission Surety P 3892 Incr. 1 90 Acres | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121414-0000 | $365,240 | State of Alabama Surface Mining Commission Surety P 3921 Incr. 1 373 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121415-0000 | $163,500 | State of Alabama Surface Mining Commission Surety  P 3892 Incr. 1 327 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121416-0000 | $834,325 | State of Alabama Surface Mining Commission Surety P 3892 Incr. 5 97 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121417-0000 | $86,480 | State of Alabama Surface Mining Commission Surety P 3921 Incr. 4 86 Acres Choctaw | Alabama Surface Mining Commission | AL |

**EXHIBIT A**
**to**
**Agreement Regarding Replacement of Bonds and Return of Collateral**
**(Arch)**

| Principal | Bond # | Bond Amount | Bond Description/ Permit No. | Obligee | Risk State |
|---|---|---|---|---|---|
| Taft Coal Sales & Associates, Inc. | SU 1121418-0000 | $638,967 | State of Alabama Surface Mining Commission Surety P 3885 Incr 1 150 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121419-0000 | $78,890 | State of Alabama Surface Mining Commission Surety P 3921 Incr. 3 98 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121420-0000 | $461,915 | State of Alabama Surface Mining Commission Surety P 3885 Incr 2 94 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121421-0000 | $442,060 | State of Alabama Surface Mining Commission Surety P 3799 Incr 3 131 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121422-0000 | $314,870 | State of Alabama Surface Mining Commission Surety P 3892 Incr. 3 107 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121423-0000 | $236,160 | State of Alabama Surface Mining Commission Surety P 3799 Incr. 4 312 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121424-0000 | $180,435 | State of Alabama Surface Mining Commission Surety P 3921 Incr. 6 69 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121425-0000 | $186,300 | State of Alabama Surface Mining Commission Surety P 3892 Incr. 6 49 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121426-0000 | $92,016 | State of Alabama Surface Mining Commission Surety P 3799 Incr. 1 136 Acres Choctaw | Alabama Surface Mining Commission | AL |

1059162.1

EXHIBIT A
to
Agreement Regarding Replacement of Bonds and Return of Collateral
(Arch)

| Principal | Bond # | Bond Amount | Bond Description/ Permit No. | Obligee | Risk State |
|---|---|---|---|---|---|
| Taft Coal Sales & Associates, Inc. | SU 1121427-0000 | $92,575 | State of Alabama Surface Mining Commission Surety P 3799 Incr. 2 116 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121428-0000 | $90,160 | State of Alabama Surface Mining Commission Surety P 3799 Incr. 5 112 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121429-0000 | $80,270 | State of Alabama Surface Mining Commission Surety P 3747 Incr. 6 76 Acres Mining Permit Blue | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121430-0000 | $75,900 | State of Alabama Surface Mining Commission Surety P 3885 Incr. 6 16 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1122210 | $10,000 | State of Alabama Surface Mining Commission. P-3974, Incr. VI, | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121431-0000 | $72,565 | State of Alabama Surface Mining Commission Surety P 3795 Incr. 6 64 Acres Gavosa | Alabama Surface Mining Commission | AL |
| | | $32,307,772 | | | |

1059162.1

EXHIBIT A TO AGREEMENT REGARDING
REPLACEMENT OF BONDS AND
DISPOSITION OF COLLATERAL (OPEN
ASPEN SURETY BONDS)

| Principal | Bond No. | Bond Description & Permit No. | Bond Amount |
|---|---|---|---|
| BLUE CREEK ENERGY, INC. | SU38134 | Blue Creek Energy No. 1 P-3964 | $1,208,420 |
| BLUE CREEK ENERGY, INC. | SU38135 | Blue Creek Energy No. 1 P-3964 | $259,210 |
| JIM WALTER RESOURCES, INC. | SU38150 | Kellerman Prep - P-3199 | $72,680 |
| JIM WALTER RESOURCES, INC. | SU38139 | Kellerman Prep - P-3199 | $585,235 |
| JIM WALTER RESOURCES, INC. | SU38146 | Kellerman Prep - P-3199 | $314,870 |
| JIM WALTER RESOURCES, INC. | SU38136 | No. 7 Mine P-3247 | $7,069,126 |
| JIM WALTER RESOURCES, INC. | SU38138 | No. 3 Mine P-3257 | $2,734,470 |
| JIM WALTER RESOURCES, INC. | SU38149 | No. 3 Mine P-3257 | $76,647 |
| JIM WALTER RESOURCES, INC. | SU38148 | No. 3 Mine P-3257 | $136,562 |
| JIM WALTER RESOURCES, INC. | SU38143 | No. 3 Mine P-3257 | $552,000 |
| JIM WALTER RESOURCES, INC. | SU38147 | No. 3 Mine P-3257 | $265,650 |
| JIM WALTER RESOURCES, INC. | SU38137 | No. 4 Mine P-3260 | $3,605,785 |
| JIM WALTER RESOURCES, INC. | SU38142 | No. 4 Mine P-3260 | $886,822 |
| JIM WALTER RESOURCES, INC. | SU38141 | No. 4 Mine P-3260 | $2,369,690 |
| JIM WALTER RESOURCES, INC. | SU38188 | No. 4 Mine P-3260 | $493,873 |
| JIM WALTER RESOURCES, INC. | SU38156 | Highway 59 P-3906 | $3,217,660 |
| TUSCALOOSA RESOURCES INC. | SU38154 | Swann's Crossing P-3944 | $3,098,938 |
| MAPLE COAL COMPANY | SU38169 | Mount McGuire Mine S300412 | $10,000 |
| MAPLE COAL COMPANY | SU38109 | Sycamore North Surface Mine S300795 | $353,160 |
| MAPLE COAL COMPANY | SU38108 | Sycamore North Surface Mine S300795 | $357,520 |
| MAPLE COAL COMPANY | SU38105 | Sycamore North Surface Mine S300795 | $488,320 |
| MAPLE COAL COMPANY | SU38103 | Sycamore North Surface Mine S300795 | $505,760 |
| MAPLE COAL COMPANY | SU38160 | Sycamore North Surface Mine S300795 | $114,000 |
| MAPLE COAL COMPANY | SU38116 | Sycamore North Surface Mine S300795 | $187,480 |
| MAPLE COAL COMPANY | SU38111 | Sycamore North Surface Mine S300795 | $283,400 |
| MAPLE COAL COMPANY | SU38110 | Sycamore So. Ext Surface Mine S304191 | $544,480 |
| MAPLE COAL COMPANY | SU38102 | Sycamore So. Ext Surface Mine S304191 | $424,960 |
| MAPLE COAL COMPANY | SU38112 | Sycamore So. Ext Surface Mine S304191 | $209,160 |
| MAPLE COAL COMPANY | SU38106 | Sycamore So. Ext Surface Mine S304191 | $152,720 |
| MAPLE COAL COMPANY | SU38107 | Sycamore So. Ext Surface Mine S304191 | $488,040 |
| MAPLE COAL COMPANY | SU38104 | Sycamore So. Ext Surface Mine S304191 | $99,600 |
| MAPLE COAL COMPANY | SU38100 | Sycamore South Surface Mine S602089 | $730,400 |
| MAPLE COAL COMPANY | SU38115 | Sycamore South Surface Mine S602089 | $192,560 |
| MAPLE COAL COMPANY | SU38113 | Sycamore South Surface Mine S602089 | $225,760 |
| MAPLE COAL COMPANY | SU38117 | Sycamore South Surface Mine S602089 | $126,160 |
| MAPLE COAL COMPANY | SU38101 | Sycamore South Surface Mine S602089 | $617,520 |
| MAPLE COAL COMPANY | SU38114 | Sycamore South Surface Mine S602089 | $199,200 |
| MAPLE COAL COMPANY | SU38133 | Huffman Surface Mine S303188 | $10,000 |
| MAPLE COAL COMPANY | SU38119 | Huffman Surface Mine S303188 | $82,840 |
| MAPLE COAL COMPANY | SU38121 | Chilton Contour/Haulroad S304387 | $12,800 |

C:\Users\PHitchings.W&S\AppData\Roaming\OpenText\DM\Temp\WS-#5767378-v3-
Exhibit_A_to_Agreement_Regarding_Replacement_Bonds.XLSX

EXHIBIT A TO AGREEMENT REGARDING
REPLACEMENT OF BONDS AND
DISPOSITION OF COLLATERAL (OPEN
ASPEN SURETY BONDS)

| Principal | Bond No. | Bond Description & Permit No. | Bond Amount |
|---|---|---|---|
| MAPLE COAL COMPANY | SU38123 | Chilton Contour/Haulroad S304387 | $46,000 |
| MAPLE COAL COMPANY | SU38129 | Refuse Area Haulroad H066700 | $11,000 |
| MAPLE COAL COMPANY | SU38125 | Katie Preparation Plant O004785 | $27,000 |
| MAPLE COAL COMPANY | SU38118 | Stover Hollow Refuse Area O004885 | $82,000 |
| MAPLE COAL COMPANY | SU38128 | Sycamore North Haulroad O602289 | $15,000 |
| MAPLE COAL COMPANY | SU38122 | Sycamore North Haulroad O602289 | $15,600 |
| MAPLE COAL COMPANY | SU38127 | Greencastle Haulroad H002500 | $20,000 |
| MAPLE COAL COMPANY | SU38163 | Eagle Loadout I068600 | $145,000 |
| MAPLE COAL COMPANY | SU38131 | Eagle Loadout I068600 | $10,000 |
| MAPLE COAL COMPANY | SU38132 | Elkridge Stockpile Area O300390 | $10,000 |
| MAPLE COAL COMPANY | SU38130 | Rhetta Deep Mine U057000 | $10,000 |
| MAPLE COAL COMPANY | SU38124 | Maple Eagle No. 1 Underground U301906 | $48,600 |
| MAPLE COAL COMPANY | SU38120 | Maple Eagle East Deep Mine U301607 | $65,320 |
| BLUE CREEK ENERGY, INC. | SU38164 | ROW Bond Form BM-174 | $50,000 |
| JIM WALTER RESOURCES, INC. | SU38182 | N/A | $859,420 |
| WALTER ENERGY, INC. | SU38172 | | $11,000 |
| WALTER ENERGY, INC. | 3119652/SU38161 | N/A | $2,500,000 |
| TAFT COAL SALES & ASSOCIATES, INC. | SU38191 | Choctaw South SAM-2009-01781-CTM | $57,068 |

| | | | |
|---|---|---|---|
| TOTAL BOND AMOUNT | | | $37,346,486 |

C:\Users\PHitchings.W&S\AppData\Roaming\OpenText\DM\Temp\WS-#5767378-v3-
Exhibit_A_to_Agreement_Regarding_Replacement_Bonds.XLSX

**<u>EXHIBIT B</u>**

**Coal Acquisition Surety Bonds**

**[see attached]**

**EXHIBIT B**
to
**Agreement Regarding Replacement of Bonds and Return of Collateral**
**(Arch Bonds - Coal Acquisition)**

| Principal | Bond # | Bond Amount | Bond Description/ Permit No. | Obligee | Risk State |
|---|---|---|---|---|---|
| Jim Walter Resources, Inc. | SU 1121405-0000 | $2,498,720 | State of Alabama Surface Mining Commission Surety Permit P-3256 Incr. 1 659 Acres JWR Mine No. 5 | Alabama Surface Mining Commission | AL |
| Jim Walter Resources, Inc. | SU 1121406-0000 | $2,496,317 | State of Alabama Surface Mining Commission Surety P-3256 Incr. 3 254 Acres JWR Mine No. 5 | Alabama Surface Mining Commission | AL |
| Jim Walter Resources, Inc. | SU 1121407-0000 | $191,590 | State of Alabama Surface Mining Commission Surety P-3256 Incr. 4 238 Acres JWR Mine 5 | Alabama Surface Mining Commission | AL |
| Jim Walter Resources, Inc. | SU 1121408-0000 | $79,810 | State of Alabama Surface Mining Commission Surety P-3256 Inr. 5 44 Acres JWR Mine 5 | Alabama Surface Mining Commission | AL |
| Jim Walter Resources, Inc. | SU 1121409-0000 | $95,105 | State of Alabama Surface Mining Commission Surety P-3256 Incr. 2 73 Acres JWR Mine 5 | Alabama Surface Mining Commission | AL |
| Jim Walter Resources, Inc. | SU 1121433-0000 | $2,159,305 | State of Alabama Surface Mining Commission Surety P-3852 Incr. 4 112 Acres East Brookwood Mine | Alabama Surface Mining Commission | AL |
| Jim Walter Resources, Inc. | SU 1121434-0000 | $861,461 | State of Alabama Surface Mining Commission Surety P-3852 Incr. 3 67 Acres East Brookwood Mine | Alabama Surface Mining Commission | AL |
| Jim Walter Resources, Inc. | SU 1121437-0000 | $71,875 | State of Alabama Surface Mining Commission Surety P-3852 Incr. 1 57 Acres | Alabama Surface Mining Commission | AL |

1059163.1

1 of 4

**EXHIBIT B**
**to**
**Agreement Regarding Replacement of Bonds and Return of Collateral**
**(Arch Bonds - Coal Acquisition)**

| Principal | Bond # | Bond Amount | Bond Description/ Permit No. | Obligee | Risk State |
|---|---|---|---|---|---|
| Jim Walter Resources, Inc. | SU 1121464-0000 | $25,000 | Public Right of Way Bond - 1370 Feet of Gas Pipe Hannah Creek Road from Black Warrior Methane Compressor Station to Entrance to No. 7 Mine | Alabama Department of Transportation | AL |
| Jim Walter Resources, Inc. | SU 1121998-0000 | $25,000 | Alabama Dept. of Conservation and Natural Resources - Coal Lease No. 6 Mine Nos. 4, 5 and 7 | Alabama Department of Conservation and Natural Resources | AL |
| Jim Walter Resources, Inc. | SU 1121999-0000 | $55,000 | Board of Trustees Univ. of Alabama - Coal Lease 4/12/97 - Mine No. 7 | Board of Trustees Univ. of Alabama | AL |
| Jim Walter Resources, Inc. | SU 1122205-0000 | $50,000 | Right of way work - Hwy 216 | Alabama Department of Transportation | AL |
| Jim Walter Resources, Inc. | SU 1122206-0000 | $25,000 | Road Bore Lock 17 Rd approx 2.7 miles from Hwy 216 | Tuscaloosa County | AL |
| Tuscaloosa Resources, Inc. | SU 1121432-0000 | $2,932,114 | State of Alabama Surface Mining Commission Surety P 3819 Incr. 4 389 Acres | Alabama Surface Mining Commission | AL |
| Tuscaloosa Resources, Inc. | SU 1121435-0000 | $308,545 | State of Alabama Surface Mining Commission Surety P 3839 Incr. 5 190 Acres Howton | Alabama Surface Mining Commission | AL |
| Jim Walter Resources, Inc. | SU 1121436-0000 | $32,200 | State of Alabama Surface Mining Commission Surety P 3852 Incr. 2 63 Acres | Alabama Surface Mining Commission | AL |
| Tuscaloosa Resources, Inc. | SU 1121438-0000 | $146,050 | State of Alabama Surface Mining Commission Surety P 3839 Incr. 1 57 Acres | Alabama Surface Mining Commission | AL |
| Tuscaloosa Resources, Inc. | SU 1121439-0000 | $137,310 | State of Alabama Surface Mining Commission Surety P 3819 Inc. 6 47 Acres Carter | Alabama Surface Mining Commission | AL |

**EXHIBIT B**
**to**
**Agreement Regarding Replacement of Bonds and Return of Collateral**
**(Arch Bonds - Coal Acquisition)**

| Principal | Bond # | Bond Amount | Bond Description/ Permit No. | Obligee | Risk State |
|---|---|---|---|---|---|
| Tuscaloosa Resources, Inc. | SU 1121440-0000 | $137,310 | State of Alabama Surface Mining Commission Surety P 3839 Incr. 3 Howton | Alabama Surface Mining Commission | AL |
| Tuscaloosa Resources, Inc. | SU 1121441-0000 | $134,435 | State of Alabama Surface Mining Commission Surety P 3839 Incr. 4 156 Acres Howton | Alabama Surface Mining Commission | AL |
| Tuscaloosa Resources, Inc. | SU 1121444-0000 | $60,000 | State of Alabama Surface Mining Commission Surety P 3774 Incr. 5 75 Acres Panther | Alabama Surface Mining Commission | AL |
| Jim Walter Resources, Inc. | SU 1121445-0000 | $43,700 | State of Alabama Surface Mining Commission Surety P 3852 Incr. 3 13 Acres  East Brookwood | Alabama Surface Mining Commission | AL |
| Tuscaloosa Resources, Inc. | SU 1121447-0000 | $35,200 | State of Alabama Surface Mining Commission Surety P 3817 Incr 1 44 Acres Panther 2 | Alabama Surface Mining Commission | AL |
| Tuscaloosa Resources, Inc. | SU 1121448-0000 | $32,430 | State of Alabama Surface Mining Commission Surety P 3839 Incr. 1 27 Acres Howton | Alabama Surface Mining Commission | AL |
| Tuscaloosa Resources, Inc. | SU 1121450-0000 | $20,800 | State of Alabama Surface Mining Commission Surety P 3817 Incr. 4 26 Acres Panther 2 | Alabama Surface Mining Commission | AL |
| Tuscaloosa Resources, Inc. | SU 1121451-0000 | $15,870 | State of Alabama Surface Mining Commission Surety P 3839 Incr 6 9 Acres Howton | Alabama Surface Mining Commission | AL |
| Tuscaloosa Resources, Inc. | SU 1121452-0000 | $8,800 | State of Alabama Surface Mining Commission Surety P 3817 Incr 6 11 Acres Panther 2 | Alabama Surface Mining Commission | AL |
| Walter Black Warrior Basin, LLC | SU 1121460-0000 | $25,000 | Oil and Gas or Geothermal Lease Bond | United States Department Of Interior - Bureau of L | AL |

**EXHIBIT B**
to
**Agreement Regarding Replacement of Bonds and Return of Collateral**
**(Arch Bonds - Coal Acquisition)**

| Principal | Bond # | Bond Amount | Bond Description/ Permit No. | Obligee | Risk State |
|---|---|---|---|---|---|
| **Bond Principal is Black Warrior Methane Corp. (not a Debtor)** | SU 1121457-0000 | $100,000 | Drilling, Operation or Production of One or More | State Oil And Gas Board of Alabama | AL |
| Walter Black Warrior Basin, LLC | SU 1121459-0000 | $180,000 | Utility Bond - Indemnity Bond for Electric Service | Alabama Power Company | AL |
| Walter Black Warrior Basin, LLC | SU 1121461-0000 | $400,000 | Drilling, Operation or Production of One or More | State Oil And Gas Board of Alabama | AL |
| Walter Black Warrior Basin, LLC | SU 1121466-0000 | $20,000 | Public Right of Way Bond - Permit Agreement | Tuscaloosa County Public Works Dept. | AL |
| Walter Energy, Inc. | SU 1121463-0000 | $25,000 | Public Right of Way Bond - Construction of Water Line - Permit Date 01/09/1999 | Tuscaloosa County Commission | AL |
| | | $13,428,947 | | | |

1059163.1

4 of 4

**EXHIBIT B TO AGREEMENT REGARDING
REPLACEMENT OF BONDS AND
DISPOSITION OF COLLATERAL (ASPEN
SURETY BONDS BEING REPLACED BY
COAL ACQUISITION)**

| Principal | Bond No. | Bond Description & Permit No. | Bond Amount |
|---|---|---|---|
| BLUE CREEK ENERGY, INC. | SU38134 | Blue Creek Energy No. 1 P-3964 | $1,208,420 |
| BLUE CREEK ENERGY, INC. | SU38135 | Blue Creek Energy No. 1 P-3964 | $259,210 |
| JIM WALTER RESOURCES, INC. | SU38136 | No. 7 Mine P-3247 | $7,069,126 |
| JIM WALTER RESOURCES, INC. | SU38137 | No. 4 Mine P-3260 | $3,605,785 |
| JIM WALTER RESOURCES, INC. | SU38142 | No. 4 Mine P-3260 | $886,822 |
| JIM WALTER RESOURCES, INC. | SU38141 | No. 4 Mine P-3260 | $2,369,690 |
| JIM WALTER RESOURCES, INC. | SU38188 | No. 4 Mine P-3260 | $493,873 |
| JIM WALTER RESOURCES, INC. | SU38156 | Highway 59 P-3906 | $3,217,660 |
| TUSCALOOSA RESOURCES INC. | SU38154 | Swann's Crossing P-3944 | $3,098,938 |
| BLUE CREEK ENERGY, INC. | SU38164 | ROW Bond Form BM-174 | $50,000 |
| JIM WALTER RESOURCES, INC. | SU38182 | Underground Coal Mining Lease on certain State lands in Tuscaloosa County, Alabama | $859,420 |
| | | | |
| **TOTAL BOND AMOUNT** | | | **$23,118,944** |

C:\Users\PHitchings.W&S\AppData\Roaming\OpenText\DM\Temp\WS-#5767534-v3-
Exhibit_B_to_Agreement_Regarding_Replacement_Bonds.XLSX

Case 15-02741-TOM11   Doc 1863   Filed 02/08/16   Entered 02/08/16 16:03:01   Desc
Main Document   Page 57 of 66

# EXHIBIT C

**Seminole APA Surety Bonds**

**[see attached]**

**EXHIBIT C**
to
**Agreement Regarding Replacement of Bonds and Return of Collateral**
**(Arch Bonds - Seminole APA)**

| Principal | Bond # | Bond Amount | Bond Description/ Permit No. | Obligee | Risk State |
|---|---|---|---|---|---|
| Atlantic LeaseCo LLC | SU 1121376-0000 | $621,680 | Reclamation Bond - Permit Number P065700 - 320 Acres | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121377-0000 | $545,160 | Reclamation Bond - Permit Number R068000 - Incr#1 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121378-0000 | $460,080 | Reclamation Bond - Permit Number S306386 - Incr#1 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121379-0000 | $388,080 | Reclamation Bond - Permit Number R068000 - Incr#2 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121380-0000 | $380,000 | Reclamation Bond - Permit Number S306386 - 379.36 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121381-0000 | $320,320 | Reclamation Bond - Permit Number S011685 - Incr#2 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121382-0000 | $267,960 | Reclamation Bond - Permit Number R068000 - Incr#3 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121383-0000 | $165,440 | Reclamation Bond - Permit Number S011685 - Incr#4 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121384-0000 | $157,160 | Reclamation Bond - Permit Number S306386 - Inc#4 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121385-0000 | $154,000 | Reclamation Bond - 69.04 Acres of Land Situated in Hamilton District of Nicholas County in WV Near Calvin Permit No. E007800 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121386-0000 | $145,000 | Reclamation Bond - Permit Number S300407 - Incr#1 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121388-0000 | $135,240 | Reclamation Bond - Permit Number U302006 - 48.40 | State of West Virginia | WV |

**EXHIBIT C**
to
**Agreement Regarding Replacement of Bonds and Return of Collateral**
**(Arch Bonds - Seminole APA)**

| Principal | Bond # | Bond Amount | Bond Description/ Permit No. | Obligee | Risk State |
|-----------|--------|-------------|------------------------------|---------|------------|
| Atlantic LeaseCo LLC | SU 1121389-0000 | $129,000 | Reclamation Bond - Permit Number Z005981 - 128.90 Acres | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121390-0000 | $116,440 | Reclamation Bond - Permit Number S306386 - Incr#3 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121391-0000 | $105,600 | Reclamation Bond - Permit Number S011685 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121393-0000 | $62,640 | Reclamation Bond - Permit Number U300610 - 17.16 Acres | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121394-0000 | $59,640 | Reclamation Bond - Permit Number S306386 - Incr#3 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121395-0000 | $59,000 | Reclamation Bond - Permit Number H062800 - 58.23 Acres | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121396-0000 | $52,360 | Reclamation Bond - Permit Number R068000 - Incr#4 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121397-0000 | $49,280 | Reclamation Bond - Permit Number U300308 - 15.70 Acres | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121398-0000 | $32,560 | Reclamation Bond - Permit Number U302707 - Incr#1 | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121399-0000 | $21,240 | Reclamation Bond - Permit Number U300807 - 8.54 Acres | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121400-0000 | $12,000 | Reclamation Bond - Permit Number H065800 - 11.32 Acres | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1121401-0000 | $10,000 | Reclamation Bond - Permit Number U009083 - 14.05 Acres | State of West Virginia | WV |

**EXHIBIT C**
to
**Agreement Regarding Replacement of Bonds and Return of Collateral**
**(Arch Bonds - Seminole APA)**

| Principal | Bond # | Bond Amount | Bond Description/ Permit No. | Obligee | Risk State |
|---|---|---|---|---|---|
| Atlantic LeaseCo LLC | SU 1122204-0000 | $204,160 | Reclamation Bonds - Permit Number S011685 - surface mining | State of West Virginia | WV |
| Atlantic LeaseCo LLC | SU 1122207-0000 | $38,400 | Reclamation Bond - Permit No. S-3016-11 Peerless Mine 1 | State of West Virginia | WV |
| Jim Walter Resources, Inc. | SU 1121404-0000 | $3,940,141 | State of Alabama Surface Mining Commission Surety Permit P-3222 Incr. 1 921 Acres | Alabama Surface Mining Commission | AL |
| Jim Walter Resources, Inc. | SU 1121410-0000 | $66,700 | State of Alabama Surface Mining Commission Surety P-3257 Incr 5 56 Acres Mine No. 3 Jefferson Co., AL | Alabama Surface Mining Commission | AL |
| Jim Walter Resources, Inc. | SU 1121469-0000 | $400,000 | Reclamation Bond - Bond Under Lease for Mining Coal (under Federal Lease) - North River Mine | Department of The Interior - Bureau of Land Manage | AL |
| Jim Walter Resources, Inc. | SU 1122202-0000 | $50,000 | Right of way work - HW AL 13 & US 43 | Alabama Department of Transportation | AL |
| Maple Coal Co., LLC | SU 1122203-0000 | $25,000 | (10) HDPE SDR 21 Pipe (Water, Non-Pressurized) through WDOH right of way and under existing two lane bridge Paint Creek Road near Whitaker, WV | State of West Virginia Dept of Highways | WV |
| Jim Walter Resources, Inc. | SU 1122208-0000 | $118,450 | Coal or Restoration of Land to Acceptable Levels P-3222 Increment 8 | State of Alabama Surface Mining Commission | AL |
| Jim Walter Resources, Inc. | SU 1122209-0000 | $415,150 | Coal or Restoration of Land to Acceptable Levels P-3222 Increment 7 | State of Alabama Surface Mining Commission | AL |

**EXHIBIT C**
**to**
**Agreement Regarding Replacement of Bonds and Return of Collateral**
**(Arch Bonds - Seminole APA)**

| Principal | Bond # | Bond Amount | Bond Description/ Permit No. | Obligee | Risk State |
|---|---|---|---|---|---|
| Taft Coal Sales & Associates, Inc. | SU 1121411-0000 | $1,481,341 | State of Alabama Surface Mining Commission Surety P- 3799 Incr. 6 163 Acres - Choctaw Mining Permit | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121412-0000 | $148,120 | State of Alabama Surface Mining Commission Surety P 3921 Incr. 1 184 Acres Reid School Mining Permit | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121413-0000 | $1,388,855 | State of Alabama Surface Mining Commission Surety P 3892 Incr. 1 90 Acres | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121414-0000 | $365,240 | State of Alabama Surface Mining Commission Surety P 3921 Incr. 1 373 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121415-0000 | $163,500 | State of Alabama Surface Mining Commission Surety P 3892 Incr. 1 327 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121416-0000 | $834,325 | State of Alabama Surface Mining Commission Surety P 3892 Incr. 5 97 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121417-0000 | $86,480 | State of Alabama Surface Mining Commission Surety P 3921 Incr. 4 86 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121418-0000 | $638,967 | State of Alabama Surface Mining Commission Surety P 3885 Incr 1 150 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121419-0000 | $78,890 | State of Alabama Surface Mining Commission Surety P 3921 Incr. 3 98 Acres Choctaw | Alabama Surface Mining Commission | AL |

1059164.1

**EXHIBIT C**
**to**
**Agreement Regarding Replacement of Bonds and Return of Collateral**
**(Arch Bonds - Seminole APA)**

| Principal | Bond # | Bond Amount | Bond Description/ Permit No. | Obligee | Risk State |
|---|---|---|---|---|---|
| Taft Coal Sales & Associates, Inc. | SU 1121420-0000 | $461,915 | State of Alabama Surface Mining Commission Surety P 3885 Incr 2 94 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121421-0000 | $442,060 | State of Alabama Surface Mining Commission Surety P 3799 Incr 3 131 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121422-0000 | $314,870 | State of Alabama Surface Mining Commission Surety P 3892 Incr. 3 107 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121423-0000 | $236,160 | State of Alabama Surface Mining Commission Surety P 3799 Incr. 4 312 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121424-0000 | $180,435 | State of Alabama Surface Mining Commission Surety P 3921 Incr. 6 69 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121425-0000 | $186,300 | State of Alabama Surface Mining Commission Surety P 3892 Incr. 6 49 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121426-0000 | $92,016 | State of Alabama Surface Mining Commission Surety P 3799 Incr. 1 136 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121427-0000 | $92,575 | State of Alabama Surface Mining Commission Surety P 3799 Incr. 2 116 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121428-0000 | $90,160 | State of Alabama Surface Mining Commission Surety P 3799 Incr. 5 112 Acres Choctaw | Alabama Surface Mining Commission | AL |

**EXHIBIT C**
**to**
**Agreement Regarding Replacement of Bonds and Return of Collateral**
**(Arch Bonds - Seminole APA)**

| Principal | Bond # | Bond Amount | Bond Description/ Permit No. | Obligee | Risk State |
|---|---|---|---|---|---|
| Taft Coal Sales & Associates, Inc. | SU 1121429-0000 | $80,270 | State of Alabama Surface Mining Commission Surety P 3747 Incr. 6 76 Acres Mining Permit Blue Ridge | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121430-0000 | $75,900 | State of Alabama Surface Mining Commission Surety P 3885 Incr. 6 16 Acres Choctaw | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1122210 | $10,000 | State of Alabama Surface Mining Commission.  P-3974, Incr. VI, | Alabama Surface Mining Commission | AL |
| Taft Coal Sales & Associates, Inc. | SU 1121431-0000 | $72,565 | State of Alabama Surface Mining Commission Surety P 3795 Incr. 6 64 Acres  Gavosa | Alabama Surface Mining Commission | AL |
|  |  | $17,228,825 |  |  |  |

1059164.1

6 of 6

EXHIBIT C TO AGREEMENT REGARDING
REPLACEMENT OF BONDS AND
DISPOSITION OF COLLATERAL (ASPEN
SURETY BONDS BEING REPLACED BY
SEMINOLE COAL)

| Principal | Bond No. | Bond Description & Permit No. | Bond Amount |
|---|---|---|---|
| JIM WALTER RESOURCES, INC. | SU38150 | Kellerman Prep - P-3199 | $72,680 |
| JIM WALTER RESOURCES, INC. | SU38139 | Kellerman Prep - P-3199 | $585,235 |
| JIM WALTER RESOURCES, INC. | SU38146 | Kellerman Prep - P-3199 | $314,870 |
| JIM WALTER RESOURCES, INC. | SU38138 | No. 3 Mine P-3257 | $2,734,470 |
| JIM WALTER RESOURCES, INC. | SU38149 | No. 3 Mine P-3257 | $76,647 |
| JIM WALTER RESOURCES, INC. | SU38148 | No. 3 Mine P-3257 | $136,562 |
| JIM WALTER RESOURCES, INC. | SU38143 | No. 3 Mine P-3257 | $552,000 |
| JIM WALTER RESOURCES, INC. | SU38147 | No. 3 Mine P-3257 | $265,650 |
| MAPLE COAL COMPANY | SU38169 | Mount McGuire Mine S300412 | $10,000 |
| MAPLE COAL COMPANY | SU38109 | Sycamore North Surface Mine S300795 | $353,160 |
| MAPLE COAL COMPANY | SU38108 | Sycamore North Surface Mine S300795 | $357,520 |
| MAPLE COAL COMPANY | SU38105 | Sycamore North Surface Mine S300795 | $488,320 |
| MAPLE COAL COMPANY | SU38103 | Sycamore North Surface Mine S300795 | $505,760 |
| MAPLE COAL COMPANY | SU38160 | Sycamore North Surface Mine S300795 | $114,000 |
| MAPLE COAL COMPANY | SU38116 | Sycamore North Surface Mine S300795 | $187,480 |
| MAPLE COAL COMPANY | SU38111 | Sycamore North Surface Mine S300795 | $283,400 |
| MAPLE COAL COMPANY | SU38110 | Sycamore So. Ext Surface Mine S304191 | $544,480 |
| MAPLE COAL COMPANY | SU38102 | Sycamore So. Ext Surface Mine S304191 | $424,960 |
| MAPLE COAL COMPANY | SU38112 | Sycamore So. Ext Surface Mine S304191 | $209,160 |
| MAPLE COAL COMPANY | SU38106 | Sycamore So. Ext Surface Mine S304191 | $152,720 |
| MAPLE COAL COMPANY | SU38107 | Sycamore So. Ext Surface Mine S304191 | $488,040 |
| MAPLE COAL COMPANY | SU38104 | Sycamore So. Ext Surface Mine S304191 | $99,600 |
| MAPLE COAL COMPANY | SU38100 | Sycamore South Surface Mine S602089 | $730,400 |
| MAPLE COAL COMPANY | SU38115 | Sycamore South Surface Mine S602089 | $192,560 |
| MAPLE COAL COMPANY | SU38113 | Sycamore South Surface Mine S602089 | $225,760 |
| MAPLE COAL COMPANY | SU38117 | Sycamore South Surface Mine S602089 | $126,160 |
| MAPLE COAL COMPANY | SU38101 | Sycamore South Surface Mine S602089 | $617,520 |
| MAPLE COAL COMPANY | SU38114 | Sycamore South Surface Mine S602089 | $199,200 |
| MAPLE COAL COMPANY | SU38133 | Huffman Surface Mine S303188 | $10,000 |
| MAPLE COAL COMPANY | SU38119 | Huffman Surface Mine S303188 | $82,840 |
| MAPLE COAL COMPANY | SU38121 | Chilton Contour/Haulroad S304387 | $12,800 |
| MAPLE COAL COMPANY | SU38123 | Chilton Contour/Haulroad S304387 | $46,000 |
| MAPLE COAL COMPANY | SU38129 | Refuse Area Haulroad H066700 | $11,000 |
| MAPLE COAL COMPANY | SU38125 | Katie Preparation Plant O004785 | $27,000 |
| MAPLE COAL COMPANY | SU38118 | Stover Hollow Refuse Area O004885 | $82,000 |
| MAPLE COAL COMPANY | SU38128 | Sycamore North Haulroad O602289 | $15,000 |
| MAPLE COAL COMPANY | SU38122 | Sycamore North Haulroad O602289 | $15,600 |
| MAPLE COAL COMPANY | SU38127 | Greencastle Haulroad H002500 | $20,000 |
| MAPLE COAL COMPANY | SU38163 | Eagle Loadout I068600 | $145,000 |

C:\Users\PHitchings.W&S\AppData\Roaming\OpenText\DM\Temp\WS-#5767648-v3-
Exhibit_C_to_Agreement_Regarding_Replacement_Bonds.XLSX

EXHIBIT C TO AGREEMENT REGARDING
REPLACEMENT OF BONDS AND
DISPOSITION OF COLLATERAL (ASPEN
SURETY BONDS BEING REPLACED BY
SEMINOLE COAL)

| Principal | Bond No. | Bond Description & Permit No. | Bond Amount |
|---|---|---|---|
| MAPLE COAL COMPANY | SU38131 | Eagle Loadout I068600 | $10,000 |
| MAPLE COAL COMPANY | SU38132 | Elkridge Stockpile Area O300390 | $10,000 |
| MAPLE COAL COMPANY | SU38130 | Rhetta Deep Mine U057000 | $10,000 |
| MAPLE COAL COMPANY | SU38124 | Maple Eagle No. 1 Underground U301906 | $48,600 |
| MAPLE COAL COMPANY | SU38120 | Maple Eagle East Deep Mine U301607 | $65,320 |

| TOTAL BOND AMOUNT | $11,659,474 |
|---|---|

C:\Users\PHitchings.W&S\AppData\Roaming\OpenText\DM\Temp\WS-#5767648-v3-
Exhibit_C_to_Agreement_Regarding_Replacement_Bonds.XLSX